SAVOY, Judge.
Plaintiff brought suit for workmen’s compensation benefits against his employer, Southern Maid Paper Company, Inc., and additionally, sought statutory penalties and attorney’s fees.
His petition alleges he is totally disabled within the meaning of the law; that on February 18, 1966, a pre-existing condition of shortness of breath became so severe as to cause him to leave his job and consult a physician, who advised him to discontinue his employment because of bronchitis and emphysema.
Defendant’s answer to plaintiff’s petition denied all of its material allegations, and specifically denied any liability to plaintiff in workmen’s compensation.
Trial on the merits resulted in a judgment for defendant, dismissing plaintiff’s suit. Plaintiff has appealed, seeking a reversal, with penalties and attorney’s fees.
Plaintiff contends that his long-developing illness was, in effect, a series of accidents, and that his ultimate disability was caused by his working conditions, or that they at least aggravated the illness. Further, he admits that his is not a claim of occupational disease, as defined by LSA-R.S. 23:1031.1.
Defendant contends that plaintiff has neither suffered an accident nor shown a causal connection between his illness and his employment, and that consequently, the illness is not compensable.
Briefly summarizing plaintiff’s background, it is to be noted that at the time of trial he was 40 years of age; he had been working for defendant for about twelve and one-half years prior to February, 1966, when he left his job; he had been suffering from a bronchial condition for about eight years prior to February of 1966. He was employed as a bag bundler, working in conjunction with a machine that converted large rolls of brown paper into bags, such as are used in grocery stores and the like, which plaintiff then bound into bundles. He claims that there was paper dust in the atmosphere which he necessarily inhaled over the years, thus causing or aggravating his bronchial condition, the dust resulting from the action of the machine in slicing the paper rolls to size.
It is apparent without belaboring the record that some amount of paper dust was present in the building where plaintiff worked. He described it by saying that if the work tables were left for two or three days without cleaning, one could then make a finger mark through the dust, or that it could sometimes be seen in the air when looking at it against a light. Other fellow employees testified in like manner. Certain of defendant’s witnesses so testified.
Gerald P. DeLong, a chemical engineer employed by defendant, testified regarding the chemical components of paper dust. He stated that in the manufacture of paper itself four chemical compounds which are caustic in their pure forms were used, but that they are neutralized in the manufacturing process. No part of the manufacturing process took place where plaintiff worked. Mr. DeLong also stated that all bags and wrappings used for food are made under standards set by the Food and Drug Administration.
*433 Dr. Hans Weill, a professor of medicine at Tulane University, internist and specialist in pulmonary diseases, testified that, after conferring with Mr. DeLong regarding the chemical components of paper dust, he knew of nothing remaining in the paper or dust after the manufacturing process which would be considered a lung, bronchial or pulmonary irritant.
Dr. G. A. Sylvester, an internist and general practitioner, testified by deposition for plaintiff. Dr. Sylvester had treated plaintiff for about eight years prior to 1966. From the beginning, he diagnosed plaintiff’s condition as asthma and bronchitis, with some degree of emphysema. Plaintiff advised him there was dust where he worked, and the doctor advised him to leave his employment. He had so advised plaintiff on prior occasions. Dr. Sylvester, however, did not run any pulmonary function studies of plaintiff, and he had been advised by plaintiff only of the general fact that dust was present at plaintiff’s place of employment, no particular details being made available to the doctor. He felt that the dust aggravated plaintiff’s condition.
On cross-examination, Dr. Sylvester stated that the plaintiff’s condition existed before plaintiff first came to see him, and that the asthma and bronchitis were present many years before then. He did not know specifically what type work plaintiff did; he stated that the type condition from which plaintiff suffered was naturally progressive and would worsen with the passage of time, in or out of his employment.
In September of 1966, Dr. Weill examined plaintiff, which examination included pulmonary function studies. As did Dr. Sylvester, he diagnosed plaintiff’s condition as asthmatic bronchitis of long standing, but found no evidence of emphysema. The doctor also visited the site of plaintiff’s employment. He further stated that in the absence of an acute specific episode with a known bronchial irritant, it is most difficult to relate chronic bronchitis medically to one’s occupation, among other reasons, because the disease is so prevalent. He found nothing to indicate a causal connection between plaintiff’s condition and his employment, among other reasons because plaintiff’s greatest difficulty occurred at night, away from his job.
With regard to the question of disability per se, we think it pertinent that Dr. Sylvester felt plaintiff was disabled, while Dr. Weill felt that he was not, or at least that if he was, the job was not causally connected thereto. No lay testimony on the point was presented, other than plaintiff’s. Proof of disability itself is thus somewhat speculative.
Be that as it may, in the absence of occupational disease, which plaintiff neither claims nor has under the law, he must, in order to sustain his action, show there was an accident which either precipitated or accelerated an existing condition. Circello v. Haas & Haynie Corp., (La.App., 1 Cir., 1959), 116 So.2d 144. His testimony admits that he suffered no accident or single significant episode. We concur with the trial court that plaintiff has not carried the burden of proving that his disease was accelerated or contributed to by his employment.
In his brief, plaintiff has cited Cannella v. Gulf Refining Co., (La.App.,Orl., 1934), 154 So. 406; Harris v. Southern Carbon Co., (La.App., 2 Cir., 1935), 162 So. 430; York v. E. I. Du Pont De Nemours & Co., (La.App., 1 Cir., 1948), 37 So.2d 68. In the Cannella case, supra, the claimant contracted lead poisoning using lead paint when working in a paint shop. In the Harris case, supra, the claimant was an electric linesman who sustained a cancerous condition of the ankle resulting from continuous friction of the straps of his climbing spurs. In the York case, supra, a congenital defect of the spinal column developed into disability attributable to repeated lifting. We find those cases inapposite to the instant case for the reason that in each of them the cause and effect was apparent and sufficiently proven.
*434 Plaintiff cited those cases to support the proposition, among others, that the term “accident” may encompass a series of small traumas, insignificant except as to their cumulative effect. Compare, however, Hargrave v. Travelers Insurance Company, (La.App., 1 Cir., 1966), 187 So.2d 8, and the Circello case, supra, which discuss such a situation rather fully and illustrate the limitations inherent in the rationale of the cumulative injury theory.
For the reasons assigned, the judgment of the district court is affirmed, all costs of this appeal being assessed against appellant.
Affirmed.