326 So.2d 726

**OLD SOUTHERN LIFE INSURANCE COMPANY**

v.

**Ocie T. WOODALL.**

**SC 1248.**

Supreme Court of Alabama.

Jan. 22, 1976.

236

Jack G. Bonner, Montgomery, Phillips &
Funderburk, Phenix City, for appellant.

C. Neal Pope, Phenix City, for appellee.

Spain, Gillon, Riley, Tate & Etheredge, Ollie L. Blan, Jr., Samuel H. Frazier, Birmingham, and Smith & Smith, Phenix City, for Liberty Nat. Life Ins. Co., Southern Life & Health Ins. Co. and Life Ins. Co. of Ala., amici curiae; Robert H. Neill, Birmingham, for Liberty Nat. Life Ins. Co., amici curiae.

SHORES, Justice.

In October, 1972, an agent of Old Southern Life Insurance Company went to the home of Mr. and Mrs. Ocie T. Woodall for the purpose of selling a hospital insurance policy to them. After some discussion, they agreed to buy the insurance offered by Old Southern and paid the first quarterly premium at that time. Thereafter, on November 1, 1972, the policy was issued covering both Mr. and Mrs. Woodall.

The policy contained the following limitations or exclusions from liability by Old Southern:

"SPECIFIED WAITING PERIODS

"Any loss resulting from tuberculosis, any disease or disorder of the heart or

circulatory system, hernia, cancer, disease or disorder of the gall bladder, disease or disorder of the urinary system shall be covered only if such disease, disorder, or sickness originates (becomes manifest by the symptoms usually associated therewith) and begins after the effective date and loss occurs no less than six (6) months after the effective date of this policy."

On the 27th day of May, 1973, Mrs. Woodall became ill and was ordered confined by her physician in Cobb Memorial Hospital in Phenix City, Alabama, for treatment. Mrs. Woodall's condition was diagnosed by her physician as pleural effusion; and she received treatment for said condition while confined in the said hospital. Mrs. Woodall's period of confinement and treatment for this condition extended from May 27 until June 16, 1973, at which time she was discharged. The charge for the services rendered by the hospital for the confinement was $1,157.95.

Subsequent to Mrs. Woodall's release from the hospital, Mr. Woodall filed a claim with Old Southern claiming all sums due under the terms of the contract. On July 26, 1973, Old Southern denied the claim of Mr. and Mrs. Woodall and stated the reason as follows:

" 'The policy which you carry with this company provides under the LIMITATIONS AND EXCLUSIONS that no Liability for certain conditions are covered unless the cause thereof originates at least six (6) months from the effective date of the policy. Since the condition that caused your hospital confinement is excluded for six (6) months, no liability could be accepted on this claim.' "

Subsequently, on the 30th day of June, 1973, Mrs. Woodall again became ill and was confined by her physician a second time in Cobb Memorial Hospital in Phenix City, Alabama, for treatment. Mrs. Woodall's condition was diagnosed on this occasion

as pneumonia of the left lung; and she was treated for this condition during her hospital confinement. Her period of confinement and treatment on this occasion extended from June 30 until July 10, 1973, at which time she was discharged. The charge for the services rendered by the hospital for this confinement was $954.25.

Subsequent to Mrs. Woodall's release from the hospital on July 10, 1973, Mr. Woodall again filed a claim with Old Southern claiming all sums due under the terms of the contract for Mrs. Woodall's June 30th to July 10th confinement.

On September 11, 1973, Old Southern denied this claim and stated the reason as follows:

" ' . . . no liability could be accepted on this claim since it is a continuation of her May 27 hospital confinement. The condition causing this confinement is not covered unless it develops at least six months after the effective date of the policy. Since this condition was present prior to the policy becoming six months old, our only alternative is to withhold liability . . . ' "

Mrs. Woodall died sometime after the second claim was denied. Thereafter, Mr. Woodall filed the lawsuit in this case claiming damages from Old Southern on three theories: (1) Fraud and deceit in inducing him to purchase the insurance policy; (2) false representations in inducing him to continue the contract in force and effect; and (3) willfully and corruptly denying its liability under the contract.

The case was submitted to the jury on all three claims; and it returned a general verdict in favor of the plaintiff in the amount of $45,000. This appeal is from the judgment rendered on this verdict.

The first argument advanced by appellant is that if a tort has been committed, the injured party is Mrs. Woodall

and that such cause of action does not survive her death. It is not disputed that causes of action sounding in tort do not survive the death of the injured party. Title 7, § 150, Code of Alabama 1940. However, it is conceded in this case that Mr. Woodall paid the premiums for the coverage offered under the policy. He and his wife were coinsured thereunder. The record affirmatively establishes that Mr. Woodall contracted with Old Southern for coverage on his wife as well as himself. It was undisputed that he paid the initial premium, and all subsequent premiums. It was Mr. Woodall who paid premiums on the policy after the claims were denied. In fact, the letters from Old Southern denying the claims for Mrs. Woodall's hospital confinement were addressed to Mr. Woodall. There is every indication that the company dealt exclusively with Mr. Woodall as if he were the sole contracting party. If there was fraud involved on the part of Old Southern, we think it is clear that Mr. Woodall was a victim of that fraud.

Old Southern contends that no claim upon which relief may be granted sounding in tort has been stated. It argues that at most Mr. Woodall has an action for breach of contract. We will address our remarks on this argument to each claim separately.

■■ The first claim asserted, that Old Southern fraudulently and falsely represented to Mr. Woodall that claims under the policy would be paid, knowing that such statements were false, constitutes, under our cases, a claim upon which relief may be granted. Undeniably, when one issues a policy of insurance, and accepts the premium therefor, there is an implied, if not express, promise to perform the act, i. e., honor valid claims made thereunder. If such promise is made with a present intent not to perform, this amounts to a fraudulent misrepresentation. In *Walker v. Woodall*, 288 Ala. 510, 513, 262 So.2d 756, 759 (1972), the following appears:

"In order for a promise to constitute a fraudulent representation it is neces-

sary that it have been made with the intent not to perform the act. *Birmingham Broadcasting Co. v. Bell*, 259 Ala. 656, 68 So.2d 314; *Nelson v. Darling Shop of Birmingham, Inc.*, 275 Ala. 598, 157 So.2d 23.

"Intent is an act or emotion of the mind seldom, if ever, capable of direct proof, but is determined by such just and reasonable deductions from the acts and facts presented as the guarded judgment of a reasonably prudent and cautious man would draw therefrom. *Hagerty v. Hagerty*, 186 Iowa 1329, 172 N.W. 259, 260. Intent is a matter peculiarly within the province of the trier of facts, in this case the jury.

"In *Turner v. Biscoe*, 141 Tex. 197, 171 S.W.2d 118, 119, the Texas court stated:

" 'The governing principles of law are familiar. A person's intention is a matter of fact. When a promise is made the promisor expressly or by necessary implication states that he then has a present intention to perform, and if such intention does not actually exist at that time, a false statement of fact has been made upon which fraud may be predicated. The gist of the fraud is deception as to an existing fact, namely, the state of the promisor's mind. That fact may be established by circumstantial evidence taken in connection with the breach, but cannot be established by the breach alone.'

"Of course, mere failure to perform is not of itself evidence of intent not to perform at the time the promise or contract was made. If it were, a mere breach of contract would be tantamount to fraud. See *Brock v. Brock*, 90 Ala. 86, 8 So. 11; *McAdory v. Jones*, 260 Ala. 547, 71 So.2d 526."

■ We agree with appellant that the mere failure to perform is not itself evidence of an intention not to perform.

Something more is required. In *Walker,* this court found that there was additional evidence introduced other than the failure to perform the promise from which the jury could have found that the promise (in that case to insure the plaintiff's truck) was made with no intent to procure such insurance.

■ We have carefully read the entire record of the evidence in this case, and find that no evidence was offered which would permit an inference that the policy was issued to the Woodalls without any intention to pay claims thereunder. The only evidence in the record to prove the allegations of the first claim was that the claims were not paid when submitted by Mr. Woodall. Absent some proof that there was something more than a failure to pay the claims, something upon which the jury could infer that at the time the policy was issued that the company had no intention to honor the claims, it was error to submit this claim to the jury.

■ We are not departing from our previous cases which recognize that generally intent can only be shown by circumstantial evidence. However, we simply find no such evidence in this record. Nor are we departing from the well-recognized rule of our cases that if some condition existed at the time of the issuance of the policy which would have prevented the company's ability to perform, and that such condition was known to the company, that circumstance would impose a duty on the company to disclose such information to the applicant for insurance. If it fails to disclose these conditions, it leaves itself open for a suit for fraud. In any contractual arrangement, a duty is imposed on the parties to the contract to disclose certain material facts; for example, the inability of one to perform the promise made. In *Mazer v. Brown,* 259 Ala. 449, 452, 66 So.2d 561, 564 (1953), it was held:

" . . . That principle has been held to apply to a buyer of goods on credit when he is insolvent or has no reasonable expectation of being able to pay for them, and he fails to disclose to the seller his condition and the seller is ignorant of it. . . . "

We find, however, no proof in this case that any condition existed known to the company that it was not able to perform the promise made under the contract. Such proof would have permitted an action based upon fraud.

■ The foregoing is dispositive of appellant's argument that no cause of action in tort can be stated when an insurance company fails to pay a claim. Under facts from which the trier of fact could conclude that it had no intention to pay such claims at the time the policy was sold, a cause of action for fraud may be established.

We turn now to the second theory of relief. In this claim, Mr. Woodall charges that the company was guilty of fraud in that it made fraudulent and false representations to him which induced him to continue to pay premiums on the policy involved, after the claims were denied. When Mrs. Woodall was first confined to the hospital, after the issuance of the policy, her condition was diagnosed as pleural effusion. When that claim was received by the company, the record shows that her medical records extending back for several years were acquired by the company. Those records indicated that she had been treated within five years of the issuance of the policy for congestive heart failure. According to the testimony of the soliciting agent, Mrs. Woodall had responded to questions on the application for insurance that the only times she had been confined to the hospital during the preceding five years were related to a broken hip. She had had several hospital confinements relating to this condition. However, the medical records, received by the company at the time the first claim was submitted, indicated that she had been hospitalized on

several occasions suffering from heart disease following the hip problem.

■ It has been held in this jurisdiction that heart disease is a serious disease and that the failure to divulge treatment for this condition in an application for insurance could increase the risk of loss. *Vredenburgh v. Liberty National Life Insurance Company*, 246 Ala. 251, 20 So.2d 207 (1944). In such cases, the insurer has a right to seek cancellation of the policy when it discovers that the insured has misrepresented the existence of this condition. Of course, the trier of the fact must believe that the insured had notice that he suffered from such disease, constructive notice being insufficient, and that such denial of the existence of the condition was made with knowledge that the denial was false or that the facts concealed were material to the risk. *Vredenburgh, supra.*

■ Under the undisputed facts of this case, Old Southern became aware that Mrs. Woodall had been hospitalized a number of times suffering from heart disease at the time the first claim was made under the policy. It did not seek cancellation of the policy, but instead, with that information in hand, denied the claim on the ground that the condition for which she was hospitalized was one which originated less than six months from the date of issuance of the policy. The reason given for the denial of the second claim was that the condition for which she was hospitalized on that occasion, at which time she was diagnosed as having pneumonia of the left lung, was that the condition was but a continuation of the illness for which she was confined the first time. In other words, the company informed Mr. Woodall that the reasons the claims were denied was that the condition was excluded under the waiting provision of the policy. Actually, a careful reading of the waiting period provision leaves one in doubt that these two conditions were excluded from coverage for six months after the date of issue. The excluded conditions do not include respiratory ailments. However, be that as it may, the company did not disclose to Mr. Woodall that the reason it was denying coverage was based upon its assertion that Mrs. Woodall had misrepresented to the company the fact that she had been treated and hospitalized for heart disease.

If, in fact, Mrs. Woodall had suffered from heart disease, and that fact was known to her, and she falsely stated in the application that she had not suffered from that malady, the company may have been entitled to terminate the policy in its entirety. However, the failure of the company to base its denial on this ground, and rather its basing the denial on the ground that the condition for which she was hospitalized was one which had occurred less than six months after the policy was issued, and was therefore excluded, is evidence from which the jury could have found that the company fraudulently and with intent to deceive Mr. Woodall continued to accept premiums on the policy, having in its possession from the time the first claim was submitted information which would permit it, on proper proof, to completely terminate all coverage under that policy. This clearly was evidence from which the jury could have found that Mr. Woodall was fraudulently induced to continue paying the premiums on the policy, the company having no intention when it accepted such renewal premium to pay any claims on the policy insofar as Mrs. Woodall's confinements were concerned. "Where there is evidence reasonably affording an inference as to whether a plaintiff was defrauded . . . the case is one for the trier of fact.. . . ." *Loch Ridge Construction Company, Inc. v. Barra*, 291 Ala. 312, 321, 280 So.2d 745, 752 (1973).

We hold, therefore, that the second theory sued on stated a claim upon which relief could be granted. There was at the very least a scintilla of evidence to support that claim. The trial court, therefore, did

not err in submitting the second claim to the jury.

The third claim asserts that Mr. Woodall suffered damage in that Old Southern fraudulently and maliciously failed to pay the claims made under the policy. There might be circumstances under which the failure to pay a claim under a policy of insurance would create a claim upon which relief may be granted sounding in tort, but such circumstances are not presented in this case. Old Southern argues that under no circumstances could a failure to pay a claim be tortious. We need not decide that question since, under the record before us, there are no circumstances shown which indicate that the company tortiously denied the claim.

In *Hamner v. Mutual of Omaha Insurance Company,* 49 Ala.App. 214, 217, 270 So.2d 87, 89, the Court of Civil Appeals, speaking through Wright, Presiding Judge, had a similar case. There the court said:

> "The substance of the allegations of Count Two is that defendant is in the business of selling hospitalization insurance and sold a policy to plaintiff; that plaintiff filed a claim for benefits under her policy; that defendant delayed action on her claim for approximately a month and then sent an agent to her home to deny the claim; that the denial of the claim was in violation of the insurance laws of the State of Alabama . . . that defendant's refusal to pay the claim was oppressive, malicious and fraudulent. Plaintiff then takes more than two pages of transcript paper to describe the oppressive, malicious and fraudulent acts, their effects upon her and the damage she suffered as a result. . . ."

The Court of Civil Appeals concluded that the allegations of that count did no more than state an action for breach of contract, and fell short of stating a cause of action in tort. Such we think is the case here.

The third claim for relief simply charges that the company committed a tort in maliciously and fraudulently refusing to pay a claim under the policy. Without more, this claim sounds in contract.

We agree with Old Southern that the trial court erred in refusing its motion for directed verdict as to the first claim, since there was no evidence that Old Southern issued the policy with the intention not to pay claims thereunder. We disagree, however, that the same failed to state a claim upon which relief could be granted, assuming such proof had been offered. We also agree that the third claim fails to state a claim upon which relief may be granted sounding in tort. Therefore, the trial court erred in failing to grant Old Southern's motion to dismiss that aspect of the complaint.

Old Southern finally argues that only the third claim for relief will support punitive damages. We disagree. Our cases have uniformly held that punitive damages may be awarded in actions for fraud, if there is evidence from which the jury can conclude that the fraud was malicious, oppressive, or gross, and the representations were made with knowledge of their falsity. *Hall Motor Co. v. Furman,* 285 Ala. 499, 234 So.2d 37 (1970); *Boriss v. Edwards,* 262 Ala. 172, 77 So.2d 909 (1954); *Treadwell Ford, Inc. v. Leek,* 272 Ala. 544, 133 So.2d 24 (1961); *J. Truett Payne Co. v. Jackson,* 281 Ala. 426, 203 So.2d 433 (1967). Moreover, ". . . The imposition of punitive damages in cases of fraud and deceit is discretionary with the jury, acting with regard to the enormity of the wrong and the necessity of preventing similar wrongs. . . ." *Loch Ridge Construction Company, Inc. v. Barra,* supra, 291 Ala. at 320, 280 So.2d at 751. These principles are applicable to the second claim.

The trial court submitted the case to the jury on all three theories, overruling

Old Southern's motion for a directed verdict as to each claim for relief. There was no evidence to support the first claim and the third theory fails to state a claim in tort upon which relief could be granted. The court erred, therefore, in overruling Old Southern's motion for directed verdict on the first and third claims. For this error the case must be reversed and remanded. *Ford Motor Company v. Thomas*, 285 Ala. 214, 231 So.2d 88 (1970); *Jordan v. Henderson*, 258 Ala. 419, 63 So.2d 379 (1953).

We see no reason to discuss other assignments of error argued, since on a retrial of the case the matter complained of is not likely to recur.

Reversed and remanded.

HEFLIN, C. J., and MERRILL, JONES and EMBRY, JJ., concur.

MADDOX, J., not sitting.