BRADLEY, Judge.
This is an insurance case.
On October 13, 1961 Mr. James Robert Berry bought a non-participating industrial policy from Vulcan Life and Accident Company. The policy provided benefits for death, loss of sight, dismemberment loss by accidental means or hospital confinement and surgery caused by sickness or accident. The policy was renewable weekly at the option of the company. The weekly premium was seventy-five cents, which was personally collected by an agent of the insurer. At the time he bought the policy Berry was fifty-one years of age.
*60 The policy contained the following provision under the section entitled “insurable ages”:
This Policy is issued only for ages next birthday two through fifty-five, and shall not cover any person past the Policy anniversary after the Insured’s having attained age sixty-five; and any premium, less any benefits drawn, paid to the Company for any period not covered by this Policy will be returned to the Insured upon request.
On April 10,1975 Berry became sixty-five years old and the next anniversary of the policy was October 13, 1975. Rawls, as agent for Vulcan and later as agent for United Insurance, continued to collect the weekly premium from Berry through January 8, 1979, i. e. after Berry reached age sixty-five.
At all times Berry had a copy of the policy in his possession. However, at no time prior to trial did Berry read the policy. At no time was Berry told by any representative of Vulcan or United that he would be covered by the policy after he reached sixty-five years of age.
On October 29, 1976 Vulcan entered into an agreement with United Insurance Company of America whereby Vulcan sold all rights, title, and interest it had in certain insurance policies to United. Included in this sale was the policy Vulcan sold to Berry. Vulcan also terminated its agency relationship with Mr. Sidney R. Rawls, who remained as agent for United.
Berry entered the hospital on November 14, 1978 and remained until November 17, 1978. Berry filed a claim for benefits under the insurance policy. The policy provided for hospital benefits of $10.00 per day. The evidence shows that Berry contacted Rawls about filing this claim and Rawls supplied Berry with one of United’s claim forms. This form was filled out and signed by Berry on November 20, 1978. Berry took this form to the hospital where it was completed on December 28, 1978. Berry assigned all benefits under the policy to the hospital when he signed the claim form.
The evidence showed that United received the claim form on January 15, 1979. On January 31, 1979 United forwarded a check in the amount of $30.00 to the hospital. On February 1, 1979 the hospital received the check from United. The affidavit of Joe Brooks, the assistant hospital administrator, stated that he received a check in the amount of $30.00 from United dated January 31, 1979 and this payment was credited to the account of James R. Berry. This is the correct amount due under the policy.
After Berry filed the claim form with the hospital he discussed payment of the claim with Rawls, the agent of United. The evidence as to the date of this conversation appears to be sometime in December 1978 or January 1979. At this time Rawls reportedly told Berry his claim would not be paid. He also told Berry the premiums paid on the policy since October 13, 1975 would not be refunded.
On July 20, 1979 Berry filed suit against Vulcan, United, and Rawls seeking damages of $1,000,000 under a claim of fraud and misrepresentation. Berry says that the insurance companies continued to collect premiums on the policy after he had reached age sixty-five, thus impliedly representing that the policy remained in force when in fact it was not in force. Berry further says that the insurance companies knew the policy was not in force and never intended to pay the claim. This, he says, constituted fraud.
Defendants answered by denying any fraud or misrepresentation on their part. United denied that the claim had not been paid and admitted that it owed $96.00, /. e. the difference in the premiums Berry had paid since October 13, 1975 less the benefits he had received.
All defendants filed motions for summary judgment in March 1980. These motions were based on the pleadings, answers to interrogatories, the deposition of Berry and the affidavits of three other persons.
On March 20, 1980 the court granted the motion for summary judgment in favor of Berry and against United for the sum of *61 $96.00 and court costs and in favor of all defendants for all amounts claimed in excess of $96.00 and court costs. Berry thereafter moved to set aside the summary judgments, which motion was denied and Berry appealed.
Appellant contends here that the trial court committed reversible error by granting summary judgments in favor of defendants. He says that the insurer’s acceptance of the premiums after he reached age sixty-five is, in and of itself, proof of the insurer’s intent to defraud him. That is, the policy clearly provides that it is no longer in effect after the insured reaches age sixty-five; hence the acceptance of a premium after age sixty-five clearly shows an intent to defraud. Appellant further says that the subsequent payment by the insurer of the amount claimed as benefits under the policy is not a defense to an action for fraud. In support of this position, appellant relies on the case of Old Southern Life Insurance Co. v. Woodall, 295 Ala. 235, 326 So.2d 726 (1976) for the statement:
[W]hen one issues a policy of insurance, and accepts the premium therefor, there is an implied, if not express, promise to perform the act, i. e., honor valid claims made thereunder. If such promise is made with a present intent not to perform, this amounts to a fraudulent misrepresentation.

We agree with appellant that the mere failure to perform is not itself evidence of an intention not to perform. Something more is required ....
. .. Absent some proof that there was something more than a failure to pay the claims, something upon which the jury could infer that at the time the policy was issued that the company had no intention to honor the claims, it was error to submit this claim to the jury.
The facts in the cited case show that the insurer had denied two claims made by the insured on the ground that the claims had arisen before the policy became effective when in fact the insurer had information at the time the claims were denied that would have permitted it to cancel the policy. But the supreme court said that failure to pay a claim is not in and of itself evidence of an intent not to pay a claim. Something more than mere failure to pay a claim is required. The court then said that possession of information at the time the first claim was denied that would have permitted the insurer to cancel the policy was evidence from which the trier of fact could have found that the insurer fraudulently induced the insured to continue paying premiums on a policy under which it had no intention of paying claims.
Although there is dispute in the evidence in the case at bar as to whether the claim was paid and whether the premiums were returned, the failure to pay the claim and repay the premiums would not alone be evidence of an intent not to pay. Something more is required.
The insured’s answer to this conclusion is that acceptance of the premiums from him after he reached sixty-five is, in and of itself, evidence of an intent not to pay claims under the policy and nothing more is required. With this position we disagree because we believe something more is required to prove intent to defraud in a case such as the one at bar.
To determine whether there was something more in the way of proof of an intent to defraud, we carefully searched the record and have been unable to find any evidence that would permit an inference that the insurer collected premiums from the insured after his sixty-fifth birthday with an intent not to pay claims. Absent such proof the trial court properly granted summary judgment.
AFFIRMED.
HOLMES, J., concurs.
WRIGHT, P. J., concurs in the result.