[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1100 
This is an appeal from a fraud and breach of contract action arising out of an alleged agreement made between Marshall Durbin Farms, Inc. (hereinafter "Durbin") and Gurney and Betty Landers. The Landerses, Lawrence County chicken growers, grew chickens for Durbin for over fifteen years. Durbin supplied the chicks, and medicine and feed for them. Each set of chicks grew in the Landerses' chicken houses for about seven weeks and then were picked up by Durbin for market. Disease became a problem with the chickens grown by the Landerses and during 1981 the Landerses had a very poor growth record with their chickens.
In June 1982, Durbin's agent told the Landerses that they would not be supplied with any more chickens. In an effort to get more chickens, Mr. Landers went to see Mr. Jones and Mr. Roden in Durbin's office in Delmar, Alabama. On June 29, 1982, Durbin's representatives entered into an agreement with Mr. Landers which provided, in part, that if the Landerses would make certain improvements to their chicken houses, including tearing down chicken house # 1, and if they would perform well as growers, then Durbin would continue to supply them with chickens. The agreement provided:
"Gurney Landers — Remodel
 "No. # 1 House — Remove and Clean up all old Material.
 "No. # 2 House — One new feeder split in center of house
One new 28,000 lb. feed bin with two augers
Feed bin in center of house
Bird proof house
Clean and oil floor — 50 lb. of sevin dust
One feeder clock — red catch line
"No. # 3 House — One New feeder split in center
One 35,000 lb. feed bin with two augers
Clean and oil floor — 50 lb. sevin dust
Bird proof house
Replace all old water troughs
Replace some fans out of old No. # 1 house
 One feed clock — red catch line "Birds will be placed in house if the above list is completed. Birds placement will be one batch at a time depending on grower record. Record must be average or above."
Relying upon the agreement, the Landerses made the requisite renovations. Durbin thereafter supplied them with a batch of chickens on July 20, 1982. About August 23, 1982, the Landerses were informed that Durbin planned to discontinue supplying chickens to growers in Lawrence County, including them. The Landerses ultimately received one more batch of chickens, on September 30, 1982. The growth records for the Landerses' final two batches of chickens ranked very high.
The Landerses' complaint was predicated upon fraud and breach of contract claims. Following a trial, the jury returned a general verdict, in favor of the Landerses for $30,000.00. The trial court denied Durbin's motion for judgment notwithstanding the verdict or in the alternative for new trial.
On appeal, the thrust of Durbin's argument is that the Landerses failed to present sufficient proof of fraud, breach of contract, or damages proximately caused thereby, and that the evidence does not support the verdict. Durbin also claims that the court committed reversible error in its instructions to the jury and in the admission of immaterial and prejudicial evidence.
The issues presented by Durbin are considered separately. *Page 1101 
 I. Fraud
Durbin initially contends that the trial court erred in denying its motion for directed verdict and its motion for judgment notwithstanding the verdict on the fraud count. Durbin claims that there was a total failure of proof of fraud — that there was no evidence of present intent to defraud, because the Landerses failed to prove that Durbin knew when it entered into the agreement on June 29, 1982, that it planned to stop supplying chickens to growers in Lawrence County.
In order to maintain a cause of action for fraud, a plaintiff must show that the defendant made a false representation concerning an existing material fact, on which plaintiff justifiably relied to his detriment. Kennedy Electric Co. v.Moore-Handley, Inc., 437 So.2d 76, 80 (Ala. 1983). In addition, where the alleged representation is predicated upon a promise to perform or to abstain from some act in the future, the plaintiff must also prove that at the time the promise was made, the promissor had an actual fraudulent intent not to perform the promise, and had a present intent to deceive the plaintiff. Kennedy Electric, supra; Purcell Co. v. SpriggsEnterprises, Inc., 431 So.2d 515, 519 (Ala. 1983). Fraudulent intent must be substantiated by the evidence, or else the claim should not be submitted to the jury. "Of course, mere failure to perform is not of itself evidence of intent not to perform at the time the promise or contract was made. If it were, a mere breach of contract would be tantamount to fraud." OldSouthern Life Insurance Co. v. Woodall, 295 Ala. 235,326 So.2d 726 (1976). Since present intent not to perform a future act is difficult to prove by direct evidence of a defendant's state of mind, a plaintiff may meet this burden by circumstantial evidence. The circumstances must, nevertheless, be such that the jury, as reasonable persons, may fairly and reasonably infer the ultimate fact sought to be proved, Clanton v. BainsOil Co., 417 So.2d 149, 151 (Ala. 1982); in this case that Durbin knew, before entering into the agreement with the Landerses, that it planned to pull out of Lawrence County.
We hold that, in this case, the issue of fraudulent intent was properly submitted to the jury. We hold that there was sufficient evidence introduced upon which the jury could reasonably infer the requisite intent. Purcell, supra, 431 So.2d at 519. For example, the evidence indicates that during the period of 1981 until August 1982, Durbin picked up additional growers in Winston County and at the same time did not take on any growers in Lawrence County. Competition remained the same during these years, and Durbin needed approximately the same number of growers.
There was also testimony from Gilbert Berryman, a grower living close to Lawrence County. He was also told on August 24, 1982, that Durbin planned to pull out of the area. When he asked why he was not told of the pullout sooner, he was told by Durbin's representatives that it would not have been advisable. Although Durbin's witnesses claimed that the decision to pull out of Lawrence County was not made until August 1982, there was testimony from other witnesses which indicated that they were informed of the pullout prior to August 1982. Accordingly, the jury could reasonably have inferred, because Durbin was picking up new growers outside of Lawrence County and the growers in Lawrence County were not getting as many chickens, that the decision to completely pull out of Lawrence County had been made prior to the June agreement entered into by the Landerses.
Durbin also contends that the trial judge erred by failing to properly instruct the jury on the issue of fraud involving a future promise and on punitive damages. Upon review of the record, it appears that Durbin failed to specifically object to the court's oral charge. "A party waives any possible error as to a trial court's oral charge by failing to specifically object and to state grounds for the objection." See GreatAtlantic Pacific Tea Co. v. Sealy, 374 So.2d 877, 882-883
(Ala. 1979); Beneficial *Page 1102 Management Corp. v. Evans, 421 So.2d 92 (Ala. 1982); Rule 51, A.R.Civ.P.
 II. Breach of Contract
Durbin contends that the contract claim should not have been submitted to the jury, because, it says, the Landerses failed to show the existence of a contract. It argues that there was no "meeting of the minds" as to how many batches of chickens Durbin would have to furnish, and as to how long the relationship would last.
We disagree. There was at least a scintilla of evidence presented to raise the question of fact of whether a contract existed between the parties. The jury was entitled to review the June 29, 1982, memo, which was evidence of the parties' intention to enter into an agreement. Whether there was a breach of that agreement was a question of fact for the jury.
 III. Damages
Durbin also argues that the Landerses failed to prove any actual damages, which (except in instances in which nominal damages may properly be awarded) is an essential element under either the breach of contract claim or the fraud claim. Arguing that the $30,000.00 jury verdict was excessive and against the great weight of the evidence, Durbin contends that no damages were incurred, since the Landerses received two batches of chickens after they entered into the agreement, and any expenses incurred were for improvements which they are still receiving benefits from. Furthermore, Durbin agrees that, based upon the course of dealings between the parties, the Landerses knew that chickens were supplied on a batch-to-batch basis, and, Durbin says, the Landerses received the same number of chickens as they generally did per year. Durbin also argues that following the alleged fraud and breach of contract, the Landerses made more money than before by obtaining chickens from a new supplier.
We disagree with Durbin and find that the jury was justified in returning the $30,000.00 verdict.
In general, damages recoverable for breach of contract are those which result naturally and proximately from the breach, and such as the parties should have contemplated when the contract was made. Damages are awarded to place the injured party in the position he would have occupied had the contract not been breached. West v. Friday, 403 So.2d 213 (Ala. 1981). In determining the damages, any necessary expenses that the parties reasonably incur in complying with the contract may be included. Additionally, expenses incurred as a result of fraudulent misrepresentation may be recovered. A party may recover all damages which were within the contemplation of the parties or which were necessary or natural and proximate consequences of the fraud. C. Gamble and D. Corley, Alabama Lawof Damages §§ 17-1, 36-32 (1982).
The Landerses claim damages as follows: That the fair market value of chicken house # 1 when torn down was $17,000.00; that the cost of replacement of feeders and equipment was $12,800.00; that diesel fuel cost then $500.00; that due to Durbin's delay furnishing chickens, they lost at least one batch of chickens, valued at $5,100.00; and the Landerses also claim that their income dropped from $36,500.00 in 1981 to $28,000.00 in 1982 due to the loss of chicken house # 1.
The expenses incurred by the Landerses were necessary to fulfill their part of the agreement and were contemplated by the parties when the agreement was entered into. Had Durbin not represented that it would continue to supply chickens, the Landerses would not have incurred the cost of the renovations.
We will not overturn the jury's award, as the amount is not so excessive as to show passion, prejudice, or improper motive.Johnson Publishing Co. v. Davis, 124 So.2d 441, 271 Ala. 474
(1960).
 IV
Finally, Durbin argues that the trial court erred by admitting improper testimony *Page 1103 
and by improperly commenting on the evidence. Upon review of the record, we find that the judge did not abuse his discretion, but that if there was any error, it was merely harmless error.
Accordingly, we affirm the trial court's judgment.
AFFIRMED.
SHORES, EMBRY, BEATTY and ADAMS, JJ., concur.