BEATTY, Justice.
The defendant, Alabama Farm Bureau Mutual Insurance Service, Inc. (Farm Bureau), appeals from a judgment for the plaintiff, John Englezos, in plaintiff’s action based upon breach of contract and fraud. We reverse and remand.
Farm Bureau owned a commercial building in Montgomery in which a restaurant, The Brass Door, was located. Janet Robbins was a major stockholder of The Brass Door. This restaurant operated for a time and then was sold to one Johnny Williams, who operated it. Williams never paid the monthly rent to Farm Bureau. He ceased operation of the business and turned it back over to Janet Robbins.
At or near that time, Englezos was operating a restaurant in Montgomery known as Costa’s. Early in 1980, Janet Robbins approached him about purchasing The Brass Door, informing him that she had a lease which expired in August with Farm Bureau for $750 per month plus five percent of the earnings over $15,000 per month.
Englezos contacted James E. Richardson, Farm Bureau’s vice president for real estate operations, around the first of June 1980, telling Richardson about his conversation with Janet Robbins. According to Englezos, he told Richardson that he would buy the restaurant if he could get a five-year lease with a five-year renewal option, and that Richardson agreed. According to Richardson, he told Englezos that he could move in as of the first of July, start paying rent as of that day, “and we would look at it and see how he did and go from there.”
Richardson testified that his understanding with Englezos was that the latter had a month-to-month lease “until I could see how he was doing,” and not that Engle-zos was to have a five-year lease. According to Richardson, if Englezos paid the rent, Richardson “would see about getting him a lease if he wanted one.” Richardson explained that he had dealt with Englezos before and wanted to see how he would do. But Richardson denied that Englezos asked for a written lease.
In any case, Englezos notified Janet Robbins of his desire to purchase the restaurant. He paid her $15,000 cash and executed a promissory note for $10,000. The sale was consummated on June 16, 1980, and Englezos moved into the building. Thereafter, according to Englezos, he went to Richardson’s office to ask if he could sign the lease, and Richardson replied: “Mr. John, my lawyers are busy now. You will have to come later or I’ll call you another time.” From that time until he received an eviction notice by registered letter on November 3,1980, Englezos never paid the rent on the first day of the month, although he acknowledged that Richardson had told him that the rent was to be paid at the first of each month. Engelzos testified further that he operated the restaurant under the verbal agreement and waited for Richardson to contact him, not paying the monthly rent because he was waiting for the lease. Indeed, Englezos testified that he would never have assumed the financial burden of the business without a lease. *1144 Janet Robbins also testified to the same effect.
According to Richardson, he telephoned Englezos monthly about the rent, and En-glezos conceded that Richardson had spoken to his wife on one or two occasions in attempts to collect the rent.
Their dispute over the rent and the lease climaxed during the last week in October. Richardson telephoned Englezos and informed him that Englezos would have to have $3,000 for past due rent by Friday, the last day of October, and gave him until noon to pay. Englezos did not pay and Richardson mailed him an eviction letter that day, October 31, 1980. Englezos admitted owing the back rent and testified that he went to see Richardson on that Friday, but did not pay the rent. However, he returned on the following Monday morning with a $3,000 check, which Richardson took, but Richardson told him that he had already sent the eviction notice. Englezos denied receiving it, and he was given a copy of the letter by Richardson’s secretary.
Englezos admitted that he never paid any rent until after Richardson had terminated his lease. He also testified that he thought the $3,000 he paid by cheek covered rent from August through November because Janet Robbins had told him that she had paid the rent through July. Robbins, by affidavit in support of Farm Bureau’s post-trial motions, deposed that after checking her records she discovered that she had not paid the back rent incurred before Englezos occupied the premises, contrary to her earlier testimony that she had paid the back rent.
Richardson ultimately entered into a lease agreement with Walter Davis, who had been negotiating with Englezos and Richardson in October about purchasing the restaurant. Englezos sold the restaurant to Davis for $17,365.
In his complaint, Englezos alleged an agreement wherein Farm Bureau promised to provide him with a written lease of the premises for a number of years, and that he agreed to rent the premises for $750 per month plus five percent of the earnings over $15,000 per month, and alleged the breach of this agreement, to his damage in the amount of $27,467.89, interest, and costs.
Englezos also alleged fraud, i.e., that Farm Bureau made representations that it would provide a written lease, knowing they were false, or made them recklessly or by mistake, and that they were relied upon by Englezos to his damage. Trial was had before a jury, which returned a verdict for Englezos for $33,952, and judgment was rendered thereon. Farm Bureau’s post-trial motions were overruled, and this appeal followed.
The first issue presented is whether the trial court erred in denying Farm Bureau’s motions for a directed verdict and judgment notwithstanding the verdict, or new trial, on the ground that the alleged agreement to give a five-year lease was void under Code of 1975, § 8-9-2.
Thus, it is the defendant’s contention that this agreement, as insisted upon by the plaintiff, was an executory contract falling within the Statute of Frauds, § 8-9-2(5), and thereby void for want of a writing. The plaintiff’s counter-argument, however, is that the purchase money (in the nature of rent) was paid and the plaintiff, as purchaser, was put in possession of the premises by the seller, thus complying with the terms of the exception contained in the statute, viz.:
“(5) Every contract for the sale of lands, tenements or hereditaments, or of any interest therein, except leases for a term not longer than one year, [is void] unless the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller;”
Although the question is not free from difficulty, we are convinced that facts adduced disclose that the agreement alleged by Englezos fell within the Statute of Frauds and that the plaintiff did not comply with the exception thereto because he did not pay the rent due before being evicted.
*1145 It is not clear when Englezos went into possession. He desired to move in soon after he closed the transaction with Janet Robbins, or sometime after the middle of June. However, his first electric power bill indicated that he moved in on July 15, 1980, or thereabouts. Richardson testified that the rent was to begin July 1, 1980. Janet Robbins testified that she had paid the rent through July. Although she did change this date backward in her later affidavit, nevertheless the jury could have believed her earlier version. Richardson had told Englezos that he could rent the premises on the same terms as Mrs. Robbins, and her lease expired at the end of July. Thus, even under Englezos’s version, his rent began sometime in August. Englezos was in possession of the premises on November 3, 1980, when he delivered his $3,000 check to Richardson to cover the rent due. However, he had already been sent an eviction notice and was given another one on that date as well. If his rent was $750 per month, and the rent he owed began on August 15, 1980, he was still in default of rent payments for the months of August, September, and October. Englezos himself knew that he was obligated to pay rent on a monthly basis and conceded that he never paid rent until after he was told he was evicted. His failure to do so under his “understanding” with Richardson is fatal to his breach of contract action, because payment of rent and possession did not concur.
Under its second issue, Farm Bureau alleges that the fraud claim should not have been submitted to the jury because there was no evidence of any promise by Farm Bureau to make a five-year lease with the present intent to defraud.
In Purcell Company, Inc., v. Spriggs Enterprises, Inc., 431 So.2d 515, 519 (Ala.1983), this Court set forth the requirements for a recovery in fraud for failing to perform a future promise:
“The only basis upon which one may recover for fraud, where the alleged fraud is predicated on a promise to perform or abstain from some act in the future ... is when the evidence shows that, at the time of the promises of future action or abstention were made, the promisor had no intention of carrying out the promises, but rather had a present intent to deceive. Robinson v. Allstate Insurance Co., 399 So.2d 288 (Ala.1981). If such intent is not substantiated by the evidence, the fraud claim should not be submitted to the jury. The failure to perform, alone, is not evidence of intent not to perform at the time the promise was made. If it were, a mere breach of contract would be tantamount to fraud. Old Southern Life Insurance Co. v. Woodall, 295 Ala. 235, 326 So.2d 726 (1976). ...
“Ordinarily, intent is a matter peculiarly within the province of the trier of facts. Walker v. Woodall, 288 Ala. 510, 262 So.2d 756 (1972). However, the jury has no untrammeled discretion to speculate upon the existence of fraudulent intent. Any finding on the issue must be based on reasonable inferences from the evidence, and intent to defraud must be clearly proved by a preponderance of the evidence. Universal Brokers, Inc. v. Higdon, 56 Ala.App. 184, 320 So.2d 690 (1975); Boulevard Chrysler-Plymouth v. Richardson, 374 So.2d 857 (Ala.1979) (Torbert, C.J., dissenting). ...”
From a review of the record, we have concluded that plaintiff has failed to adduce any evidence supporting an intent NOT to give Englezos a written lease for five years at the time the promise was made. What was the evidence bearing on this point? Englezos testified that he told Richardson he had discussed purchasing the restaurant with Janet Robbins, and that Richardson replied that he would be glad to lease the property on the same terms as Robbins’s lease for five years, but Englezos never discussed the lease with Richardson thereafter. There was testimony that Richardson had never before rented the property without a written lease, and, indeed, in probably “no less than half a dozen” prior occasions had he rented commercial property without a written lease. Nevertheless, this evidence falls short of *1146 establishing a “present intent to deceive” in this instance, i.e., an actual fraudulent intent, but is consistent with a failure to perform, which, in Woodall, supra, we held not to be sufficient in a fraud claim.
It was error, therefore, to deny the defendant’s motion for a directed verdict, or, in the alternative, the defendant’s motion for judgment notwithstanding the verdict. Accordingly, we have no alternative but to reverse the judgment and remand the cause. It is so ordered.
REVERSED AND REMANDED.
TORBERT, C.J., and FAULKNER, ALMON, SHORES, EMBRY and ADAMS, JJ., concur.
MADDOX and JONES, JJ., recuse themselves.