614 So.2d 1034 (1993)
CABNETWARE, INC.
v.
BIRMINGHAM SAW WORKS, INC.
1911420.
Supreme Court of Alabama.
March 12, 1993.
*1035 Macbeth Wagnon, Jr. and Stewart M. Cox of Bradley, Arant, Rose & White, Birmingham, for appellant.
Dennis G. Pantazis of Gordon, Silberman, Wiggins & Childs, P.C., Birmingham, for appellee.
HOUSTON, Justice.
Cabnetware, Inc., appeals from a judgment entered on a jury verdict in favor of Birmingham Saw Works, Inc. We reverse and remand.
Cabnetware is a California-based manufacturer and distributor of computer software that enables a user to produce detailed designs for custom cabinet installations. The software allows the user to visualize on a computer monitor the arrangement, dimensions, and style of cabinets to be installed in a kitchen or other area, thereby largely eliminating the need for sketches, blueprints, etc. The computer image produced by the software is three-dimensional. The software is provided to companies in the cabinet or woodworking industry that wish to act as dealers for the product in various parts of the country. Birmingham Saw Works is an Alabama-based company that sells woodworking machinery and supplies to cabinet makers and others in the woodworking and furniture industry. In May 1987, a representative of Birmingham Saw Works contacted a Cabnetware representative and asked to become a distributor of Cabnetware's software. Cabnetware orally agreed that Birmingham Saw Works could sell its software in a five-state territory. Cabnetware later assisted Birmingham Saw Works in implementing a sales program for the software. Cabnetware and Birmingham Saw Works operated under an oral distributorship agreement from early June 1987 until late September 1987. Sometime before September 29, 1987, Birmingham Saw Works requested that the agreement be reduced to writing. In response to that request, Roy Bingham, Cabnetware's secretary and treasurer, prepared, signed, and submitted to Birmingham Saw Works a one-page statement of their agreement:
"For consideration, CABNETWARE, INC., grants to BIRMINGHAM SAW WORKS distribution rights to all their software products in the states of Alabama, Georgia, Mississippi, Tennessee and Kentucky.
"CABNETWARE, INC., will furnish one security key and a manual with each program sold. CABNETWARE, INC., will support all sales by BIRMINGHAM SAW WORKS via the telephone and mail service. On a mutually agreed upon basis, CABNETWARE, INC., will support on a direct and personal basis individual selling efforts of BIRMINGHAM SAW WORKS. CABNETWARE, INC., further agrees to provide advertising support on a national basis and on an individual mailing basis when requested by BIRMINGHAM SAW WORKS. CABNETWARE, INC., agrees to pay to BIRMINGHAM SAW WORKS, 50% of the selling price of all their software programs that are sold and installed by BIRMINGHAM SAW WORKS in their assigned territory. The selling price to the end user will always be determined by mutual agreement.

*1036 "BIRMINGHAM SAW WORKS is authorized to receive payment in full from the end user for CABNETWARE, INC., products. CABNETWARE, INC., must be paid for all software within 30 days of being sent from CABNETWARE, INC. "This agreement shall remain in effect so long as BIRMINGHAM SAW WORKS does not engage in an active effort to sell any competing software and as long as [it] sell[s] a minimum of any six CABNETWARE, INC., programs in a six month period."
This written statement was approved by Birmingham Saw Works.[1]
Although Birmingham Saw Works was successful in marketing Cabnetware's software in its five-state territory, Cabnetware and Birmingham Saw Works eventually encountered problems in their business relationship. The evidence shows that Birmingham Saw Works was late in paying a number of Cabnetware's invoices in 1988 and that Cabnetware requested in December 1988 that future payments be timely. Birmingham Saw Works, which acknowledged that it was having financial difficulty in 1988, paid in a timely fashion thereafter. The evidence also shows that Cabnetware began receiving complaints in September 1988 from certain customers who apparently were not satisfied with the service they were receiving from Birmingham Saw Works.
In December 1988, Cabnetware decided to hire a second distributor to operate within the same five-state territory that had been assigned to Birmingham Saw Works, and it notified Birmingham Saw Works of its decision by letter dated December 27, 1988. The new distributor also sold software for Cabnetware in other parts of the country and accounted for approximately 50% of Cabnetware's sales. Aware that the distributorship agreement did not grant it the exclusive right to sell and service Cabnetware's software in its designated territory, Birmingham Saw Works accepted the increase in competition and continued to operate as a Cabnetware distributor. Even though Birmingham Saw Works had never failed to meet its minimum sales quota, Cabnetware notified Birmingham Saw Works by letter dated March 22, 1989, that it intended to terminate the distributorship agreement effective April 22, 1989. Roy Bingham testified that Cabnetware's agreement with Birmingham Saw Works was terminated primarily because Birmingham Saw Works had been late in making payments in 1988. Birmingham Saw Works, which had remained current in its payments after Cabnetware complained in December 1988, continued to sell and service Cabnetware's software until the agreement was terminated in April 1989.
Birmingham Saw Works sued Cabnetware, alleging breach of contract and fraud, and seeking both compensatory and punitive damages. A jury returned a general verdict for Birmingham Saw Works, awarding it $473,000 in compensatory damages and $100,000 in punitive damages, and the court entered a judgment on that verdict.
Although Cabnetware raises several issues, the dispositive issue is whether the trial court erred in submitting Cabnetware's fraud claim to the jury. If the evidence was insufficient to submit the fraud claim to the jury, as Cabnetware contends, then the judgment must be reversed and the case remanded, for it is evident by the award of punitive damages that the jury found Cabnetware liable for fraud.
Birmingham Saw Works based its fraud claim on allegations that Cabnetware intentionally or recklessly misrepresented in the distributorship agreement that the "agreement [would] remain in effect ... as long as [Birmingham Saw Works sold] a minimum of any six Cabnetware, Inc., programs in a six month period." Although Birmingham Saw Works argues otherwise, we agree with Cabnetware that the fraud claim is based on allegations that Cabnetware *1037 promised to perform, or to abstain from, some act in the future. The language in the distributorship agreement relied on by Birmingham Saw Works constituted a promise on the part of Cabnetware that it would perform under the contract (i.e., that it would not terminate it) as long as Birmingham Saw Works met the minimum sales quota.
Recently, in Centon Electronics, Inc. v. Bonar, 614 So.2d 999 (Ala.1993), this Court reaffirmed the well-established standard by which claims based on allegations of promissory fraud are to be reviewed:
"`"The only basis upon which one may recover for fraud, where the alleged fraud is predicated on a promise to perform or abstain from some act in the future ... is when the evidence shows that, at the time ... the promises of future action or abstention were made, the promisor had no intention of carrying out the promises, but rather had a present intent to deceive. Robinson v. Allstate Insurance Co., 399 So.2d 288 (Ala. 1981). If such intent is not substantiated by the evidence, the fraud claim should not be submitted to the jury. The failure to perform, alone, is not evidence of intent not to perform at the time the promise was made. If it were, a mere breach of contract would be tantamount to fraud. Old Southern Life Insurance Co. v. Woodall, 295 Ala. 235, 326 So.2d 726 (1976)...."'"
Because this case was not pending on June 11, 1987, our standard for reviewing the sufficiency of the evidence to support the plaintiff's claim for compensatory damages under the fraud count is the "substantial evidence rule." Ala.Code 1975, § 12-21-12. However, because the cause of action accrued after June 11, 1987, our standard for reviewing the sufficiency of the evidence to support the claim for punitive damages under the fraud count is the "clear and convincing evidence rule." Ala. Code 1975, §§ 6-11-20, 6-11-30. "Clear and convincing evidence" is defined in § 6-11-20(b)(4) as follows:
"Clear and convincing evidence. Evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt."
See, also, Berry v. Fife, 590 So.2d 884 (Ala.1991).
The undisputed evidence in the present case shows that no discussions took place between any of the representatives of Cabnetware and Birmingham Saw Works with respect to the duration of the distributorship agreement. The only indication of the parties' intent as to the duration of the agreement is found in the agreement itself and in the testimony of Bo Thuston (president of Birmingham Saw Works), and Roy Bingham. The agreement itself contains no expiration date. Thuston testified that he had felt as if his company "would sell Cabnetware forever." Bingham testified that he "didn't have a period of time in mind" and that he believed that "either party could withdraw from the relationship at any time if they became dissatisfied with the other party." It is this last statement by Bingham that Birmingham Saw Works says required submitting its fraud claim to the jury. In other words, Birmingham Saw Works maintains that the jury could have reasonably inferred from Bingham's testimony alone that Cabnetware, when it entered into the distributorship agreement, did not intend to continue its business relationship with Birmingham Saw Works as long as Birmingham Saw Works met the minimum sales quota. We disagree.
Bingham's testimonythat he believed the agreement to be terminable by either party if it became dissatisfied with the other partydoes show that when Cabnetware entered into the distributorship agreement he thought that Cabnetware had the legal right to terminate the agreement for a reason other than a failure on the part of Birmingham Saw Works to meet the minimum sales quota. Although *1038 we agree with Birmingham Saw works that a jury question was presented as to whether Cabnetware breached the contract, we fail to see how, in the absence of other evidence, anyone could reasonably infer from Bingham's testimony that Cabnetware, when it entered into the agreement, did not intend to maintain its business relationship with Birmingham Saw Works as long as the minimum sales quota was met.[2] Clearly, no substantial evidence (and, consequently, no clear and convincing evidence) of fraud was presented in this case. As we have stated many times, the failure to perform, alone, is not evidence of intent not to perform at the time the promise was made. If it were, a mere breach of contract would be tantamount to fraud.
After carefully reviewing the record and the briefs, we hold that the evidence was not sufficient to submit the fraud claim to the jury and, therefore, that the judgment is due to be reversed and the case remanded for a new trial on the contract claim.
We pretermit further discussion of Cabnetware's other issues, except to note that we can find no error on the trial court's part in allowing Birmingham Saw Works to use during closing argument a chart depicting the projected loss of future net profits from the sale of Cabnetware's software. Although, as Cabnetware correctly points out, the trial court refused to allow Thuston to speculate as to specific dollar amounts that he expected Birmingham Saw Works to lose in the years 1990-1996, and although the trial court refused to allow Birmingham Saw Works to use the chart during its examination of Thuston, the trial court did rule that there was sufficient evidence from which Birmingham Saw Works could argue that the amounts depicted on the chart represented the amount of future lost profits (i.e., there was evidence showing the net profits realized by Birmingham Saw Works in 1987, 1988, and the first three months of 1989; its projected marketing period and customer base; and its history of sales performance). Therefore, we are not persuaded that the trial court allowed Birmingham Saw Works to argue facts not inferable from the evidence.
For the foregoing reasons, the judgment is reversed and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
MADDOX, ALMON, ADAMS, STEAGALL, KENNEDY and INGRAM, JJ., concur.
HORNSBY, C.J., and SHORES, J., concur in the result, but disagree with the rationale.
HORNSBY, Chief Justice (concurring in the result, but disagreeing with the rationale):
I agree with the majority's treatment of the fraud claim as a claim of promissory fraud, i.e., Birmingham Saw Works claimed "that Cabnetware promised to perform, or to abstain from, some act in the future." However, I disagree with the conclusion that there was insufficient evidence of fraud to warrant presentation of that claim to the jury. The majority basically holds that Cabnetware was entitled to a summary judgment on the claim of promissory fraud, but I cannot reach that conclusion, given our rule that on a motion for summary judgment this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable *1039 doubts against the movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986); Harrell v. Reynolds Metals Co., 495 So.2d 1381 (Ala.1986). See also Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).
Bingham's testimony that he believed, when he wrote the "six month" term in controversy, that he could terminate the agreement if he was dissatisfied with Birmingham Saw Works for any reason, is sufficient to enable a jury to find promissory fraud. I believe that a jury could reasonably infer that Bingham did not intend what he said when he represented that Birmingham Saw Works would have the distributorship agreement so long as it sold six software packages every six months. In other words, I find substantial evidence of fraud.
Had the jury's verdict been based on a finding of no promissory fraud, I would have voted to affirm. However, the record in this case indicates that the jury was not fully instructed as to the elements of promissory fraud. Because I agree with the majority that the fraud claim is based on promissory fraud, I conclude that the trial court's error in failing to instruct in this regard is not harmless. Accordingly, I agree that the judgment is due to be reversed and the cause remanded; however, I believe that on remand, Birmingham Saw Works should be allowed to present its evidence of fraud to a properly charged jury.
SHORES, J., concurs.
NOTES
[1] At the request of Birmingham Saw Works, Cabnetware later waived the first condition set out in the last paragraph of the agreementthat Birmingham Saw Works not engage in an active effort to sell competing software. The second condition set out in the last paragraph merely represented a minimum sales quota.
[2] The agreement, although indefinite as to its duration, was nonetheless ambiguous as to when and under what circumstances Cabnetware could terminate the distributorship. The question whether a contract is ambiguous is a question of law for the court. If the terms within a contract are plain and unambiguous, the construction of the contract and its legal effect become questions of law for the court and, when appropriate, may be decided by a summary judgment. However, if the terms within the contract are ambiguous in any respect, the determination of the true meaning of the contract is a question of fact to be resolved by a jury. McDonald v. U.S. Die Casting & Development Co., 585 So.2d 853 (Ala.1991). After reviewing the record, we conclude that the trial court properly submitted the contract claim to the jury. The evidence presented a jury question as to whether Cabnetware had a legal basis for terminating the agreement, given the undisputed fact that Birmingham Saw Works was complying with the minimum sales requirement.