Appellant J.A. Clanton initiated this cause in a two-count complaint, which as amended is premised upon breach of contract and fraudulent misrepresentation, allegedly emanating from negotiations between Clanton and Appellee A.S. Bains regarding the possibility at some prospective date of a sale of Bains's oil distributorship to Clanton.
Upon a jury trial, at the close of Plaintiff's evidence, the trial court granted Defendants' motions for directed verdicts. From the denial of his motion for a new trial, Clanton appeals. We affirm.
Clanton began his career in the oil industry in 1965 as a sales trainee for Texaco. In 1970, Clanton was appointed general operations manager of Texaco's Montgomery, Alabama, facilities.
In January of 1976, while still employed with Texaco, he commenced a series of discussions with Bains regarding the possibility at some future date of purchasing Bains's oil distributorship in Oneonta, Alabama. Following such discourse, Clanton obtained stationery from Bains Oil Company, Inc., and had his wife type a "letter," entitled "A Suggestive Draft of Intent." This memorandum and attachments, reflecting many of the parties' ideas from previous conversations, was thereafter forwarded to, and signed by, Bains.
Subsequently, Clanton resigned his position with Texaco and began full-time employment with Bains Oil Company, Inc. Under the parties' agreement, Clanton entered into a six-month trial employment with Bains Oil. Extremely relevant to this appeal is the last sentence of the memorandum, which states, "The total purpose of the above is the transfer of operations to one J.A. Clanton in the future." (Emphasis added.) Additionally, on an attachment to this writing was embodied the phrase, "Objective: Total fairness to all concerned." The memorandum and its attachments are devoid of any listing of assets purportedly to be included in a future sale, the date of such sale, or any amount reflecting the sales price of the business.
Clanton's testimony concerning his information as to an approximate sales price of the business prior to his "letter" of February, 1976, is summarized as follows:
 "Q. Now at the time this paper, this letter was written, took place around February 8th, 1976. I believe you testified that — Had there ever been a representation made to you about the value of the assets or the assets of Bains Oil Company?
"A. There was only one.
"Q. Was it before or after this letter?
"A. It was before.
"Q. And what was that representation?
"A. Three hundred thousand.
 "Q. And at that time were you also told that there was a debt owing by Bains Oil Company to a bank here in town of about a hundred thousand dollars?
"A. No sir, it was more.
"Q. It was more than a hundred thousand dollars?
"A. Yes sir.
"Q. But before this you were told about that?
"A. I was told, yes.
" . . .
 "Q. Was there any representation made to you as to whether that three hundred thousand dollar figure took into account the hundred thousand dollar debt?
"A. No sir.
 "Q. It never was mentioned whether it did or whether it didn't?
"A. That's correct."
In June or July of 1978, Clanton requested a formal proposal from Bains, constituting an offer to sell. Pursuant to this inquiry, Bains, on September 11, 1978, forwarded to Clanton a formal offer of sale of *Page 151 
the assets and inventory of Bains Oil, with an asking price of $403,000.00.
Clanton rejected Bains's original offer of $403,000.00, while submitting two counter proposals, both of which were refused by Bains on September 28, 1978.[1] A short time thereafter, Clanton's employment with Bains Oil was terminated.
 I. Breach of Contract
Included in Clanton's "Issues Presented," though not vigorously argued, is the contention that the trial court erred in directing a defendant's verdict on the contract claim. Suffice it to say that we fully endorse the trial judge's finding that the evidence of record falls woefully short of the merest suggestion that Bains breached any contract with Clanton.
Elementary to contract principles is the axiom that "agreements to later agree are not enforceable." Cowin v.Salmon, 244 Ala. 285, 13 So.2d 190 (1943). Clearly, the memorandum and attachments evidenced, if anything, no more than an agreement to agree at a future date upon terms and conditions of a contract. See Coley v. Lang, 339 So.2d 70
(Ala.Civ.App. 1976).
 II. Misrepresentation
The crux of this appeal, as we perceive it, is Clanton's strenuous contention that, incorporated within the discussions, as well as the memorandum and its attachments, was an intent by Bains to wilfully misrepresent to Clanton his (Bains's) prospective intentions of selling Bains Oil, Inc. The essence of this argument is succinctly stated in the record on appeal by Clanton's own testimony:
 "Q. So what you are saying then, is that Sid said he'd sell you the business on a fair and equitable basis and you're saying he didn't.
"A. That's correct.
"Q. Is that in a nutshell what we're talking about?
"A. That's correct."
We are unable to glean from the evidence of record before us even the slightest inference supportive of Clanton's supposition of Bains's fraudulent activities. Stated simply, Clanton bottoms his theory of fraud on his personal dissatisfaction with Bains's $403,000.00 formal offer to sell Bains Oil, which Clanton rejected.
In order for promises or opinions to constitute fraudulent misrepresentations, there must have been at the time the representations were made an intention not to do the act promised, and such promise or opinion must have been given with intent to deceive. Birmingham Broadcasting Co. v. Bell,259 Ala. 656, 68 So.2d 314 (1953). A promise, to constitute fraud, must be made with the intent not to perform it. Schwab v.Carter, 226 Ala. 173, 145 So. 450 (1933).
While a plaintiff may meet, by circumstantial evidence, this burden of proving a present intent not to perform a future act as promised, the circumstances shown by the evidence of record must be such that the jury, as reasonable persons, may fairly and reasonably infer the ultimate fact sought to be proved. Here, not only do we find a total absence of any evidence of probative value tending to show Bains's intent not to perform the agreement to sell as promised, but, as we have seen, Clanton's own testimony respecting Bains's approximate estimation of the value of the business is to the contrary.
Admittedly, if Bains had led Clanton to believe that, at the close of Clanton's six-month temporary employment period, he (Bains) would sell the business to Clanton for approximately $200,000 ($300,000 less the $100,000 indebtedness), and then, six months later, Bains formalized that agreement with a nonnegotiable $400,000 offer, such evidence could support an inference that Clanton was fraudulently induced to accept temporary employment with the view of purchasing the business for an approximate price when, in fact, Bains, at the time of the original inducement, intended to deceive Clanton in that he did not so intend to sell. *Page 152 
But this is not the case before us. In spite of the admonition of our cases disfavoring directed verdicts, our view of the evidence of record does not disclose any evidentiary basis to overcome Defendants' motions.
The trial judge was correct in his determination as to the absence of any evidence of fraud, and his judgment based upon a directed verdict is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, SHORES and EMBRY, JJ., concur.
[1] The record reflects that no offer or counter-offer was ever accepted by either of the parties.