This is an appeal from a summary judgment entered against plaintiff in an action based upon fraud and breach of contract. We affirm.
The action grew out of a listing contract between South Central Bell Telephone Company (Bell) and P S Business, Inc. (P S). P S was listed in the business "white pages" section of the 1982 Birmingham telephone directory under various trade names. For example, following the various listings for "IBM CORP" in the 1982 directory, there appeared in bold black type a listing for "IBM TYPEWRITER SERVICE SUPPLIES, 4511 5th Av S — 595-8322," which was a listing for P S.
In January 1983, P S contracted with Bell for the listing of the following trade names in the business white pages of the 1983 Birmingham telephone directory: IBM Typewriter Service 
Supplies; Olivetti Copier Service Supplies; Olympia Business Equipment; Savin Copier Repair Supplies; and Sharp Copier Sales, Service Supplies. The form agreement requesting these listings was signed on behalf of P S by Stephen Phillips on January 13, 1983. This agreement contained a number of provisions, at least two of which are relevant here [1]:
 "1. The advertising described on the reverse side is for insertion in the next directory issue and in each subsequent directory issue until cancelled by either party giving written cancellation notice to the other party at least 15 days prior to the closing date of the directory issue in which the advertising is not to be inserted."
 "4. Applicant hereby warrants that he is duly authorized to sell the product or service shown in the copy submitted for the advertisement or listing, and that he has the right to use and advertise the trade mark, service mark or trade name feature therefor. In the event of any objection to the Applicant's right to use or advertise such trade mark, service mark or trade name, the Telephone Company may terminate agreement without notice."
Later, and before the publication of the 1983 directory, Mr. George Dear, operations manager of Bell's directory department, received a copy of a letter from Mr. Joseph P. Thorne, a trademark-copyright attorney with the IBM Corporation, to P S dated March 4, 1983. The letter from Mr. Thorne to P S stated that P S was not an authorized IBM dealer, that its use of the IBM heading was not proper, and that the listing had confused IBM Corporation's customers. The letter also told P 
S to remove this heading from the next telephone directory.
As a result of Mr. Thorne's letter, Mr. Dear wrote Stephen Phillips of P S on March 30, 1983. The closing date for the 1983 telephone directory was April 26, 1983. Mr. Dear informed P S that Bell had received a letter from the IBM Corporation which stated P S was not an authorized IBM dealer and that use of the IBM name in the white pages of the directory by P 
S was improper and misleading to the public. Mr. Dear stated that Bell needed some evidence that P S was authorized by the other companies to be listed, since the other listings appeared to have the same potential to be confusing and misleading. Mr. Dear stated that pursuant to the contract he was giving 15 days' notice of cancellation of a portion of the contract, and he noted that the deadline for making changes in listings and advertising was April 19, 1983.
Mr. Phillips received Mr. Dear's letter on April 6, 1983. On that same date, Mr. Phillips wrote and acknowledged receipt of Mr. Dear's letter; however, P S did not *Page 930 
give Bell proof that P S was authorized to do business by the companies in question. Mr. Phillips asserted that P S sold numerous IBM typewriters every month and could furnish billings and checks proving payment. Mr. Phillips also asserted that from April 6, the date of receipt of the letter, to April 19 was insufficient notice.
In July 1983, when the new directory came out, the white pages advertising for P S was not included in the directory. P S sued Bell and L.M. Berry Company (not a party to this appeal) for fraudulent misrepresentation and breach of contract. In due course, Bell moved for summary judgment, based upon the affidavit of George Dear and other documents, including copies of the correspondence referred to above as well as copies of the listing contracts. On June 29, 1984, after a hearing, the trial judge granted Bell's motion for summary judgment and entered a final judgment under the provisions of Rule 54 (b), A.R.Civ.P. On June 21, 1984, P S filed a notice of appeal to this Court. On August 20, 1984, Bell filed in this Court a motion to strike plaintiff's brief. Because of our decision on the merits of plaintiff's claim, we need not reach the motion to strike plaintiff's brief.
 I.
Did the trial court err in granting summary judgment on the fraud count of P S?
The elements of fraud are (1) a false representation (2) of a material existing fact (3) relied upon the plaintiff (4) who was damaged as a proximate result of the alleged misrepresentation. Earnest v. Pritchett-Moore, Inc.,401 So.2d 752 (Ala. 1981). If the fraud is based upon a promise to perform or abstain from performing some act in the future, two additional elements must be proved: (1) the defendant's intention, at the time of the alleged misrepresentation, not to do the act promised, coupled with (2) an intent to deceive.Clanton v. Bains Oil Co., 417 So.2d 149 (Ala. 1982).
In its complaint, P S alleged that Bell represented that the requested additional listings of P S in the business white pages would appear in the 1983 Birmingham telephone directory if P S continued advertising in the yellow pages, and further alleged that Bell would not remove the additional listings if P S left the listings exactly as they appeared in the 1982 directory. Thus, the alleged misrepresentations were based upon a promise to perform an act in the future, that is, printing the listings in the 1983 directory. Therefore, in order for P S to prove the fraud as alleged, P S was required to prove that Bell had a present intent to deceive P 
S at the time the alleged misrepresentations were made. The record supports Bell's assertion that there were no misrepresentations; in fact, Bell informed P S in writing prior to the directory's publication that its listings would not appear in the 1983 white pages. Contrary to the allegations of P S, there is no evidence from which it may be inferred that Bell had no intention to publish the additional listings of P S in the 1983 directory before it received notice from IBM that P S was not an authorized IBM dealer. Bell, in fact, demonstrated its willingness to publish the additional listings if P S provided evidence that it was indeed an authorized dealer of the companies in question.
Failure to perform a promised act is not in itself evidence of intent to deceive at the time the promise was made. PurcellCo. v. Spriggs Enterprise, Inc., 431 So.2d 515 (Ala. 1983). If it were, the mere breach of a contract would be tantamount to fraud. Id. Unless a plaintiff puts forth some proof that there was something more than a failure to perform, something upon which a jury could infer that at the time the promise was made the defendant had no intention of performing, it is error to submit a fraud claim to the jury. Old Southern Life Ins. Co. v.Woodall, 295 Ala. 235, 326 So.2d 726 (1976). P S failed to meet this requirement, and the trial court correctly granted summary judgment, since in its affidavit P S put *Page 931 
forth no facts to counter the affidavit of Bell, as required by Rule 56 (e), A.R.Civ.P.
 II.
Did the trial court err in granting summary judgment on the contract claim?
The principal argument of P S is that the notice requirements of the contract are ambiguous and thus should be resolved in its favor with a holding that proper notice was not timely made. However, that argument overlooks the express language of Provision 4 of the contract between Bell and P S. Bell had the right to cancel, without notice, the application of P S in the event any objection was made to the use of the trade names in additional listings by P S.
Whether a contract is ambiguous is a question of law for the trial court to determine. Haddox v. First Alabama Bank ofMontgomery, 449 So.2d 1226 (Ala. 1984). When the terms of a contract are clear and certain, it is the duty of the court and not the jury to analyze and determine the meaning of a contract. Id. The court may not construe a contract which is by its terms plain and free from ambiguity, but must enforce it as written. Kinnon v. Universal Underwriters Ins. Co.,418 So.2d 887 (Ala. 1982). Ambiguities will not be inserted into contracts by strained and twisted meaning where no such ambiguities exist. Michigan Mutual Liability Co. v. Carroll,271 Ala. 404, 123 So.2d 920 (1960).
The agreement between P S and Bell, in particular the cancellation provisions, are free from ambiguity and, accordingly, must be enforced as written. Indeed, Provision 4 appears to be peculiarly directed to situations like the present one.
Although this Court has not addressed this specific point, other jurisdictions firmly support the trial court's ruling. InSouth Central Bell Telephone Co. v. McKay, 285 So.2d 563
(La.Ct.App. 1973), the Louisiana court addressed the issue whether or not the telephone company had breached its contract with a subscriber when it refused to publish that subscriber's listing as a member of the National Society of Interior Designers (NSID) under the NSID classification in the yellow pages of its telephone directory. The evidence showed that the subscriber's name failed to appear in a letter from the local NSID representative listing all members of the organization. The application for the listing contained the same clause regarding trade names as the clause in the contract at issue here.
In McKay, the telephone company established that disputes frequently arose concerning the rights of individuals and firms to be listed in the yellow pages under certain trade names. To avoid involvement in such controversies, it was the telephone company's policy not to publish the name of an advertiser under a given trade name if any opposition was received or if any doubt or question arose concerning its right to use the name. For these reasons, the company chose not to publish this particular subscriber's name under the NSID classification.
The Louisiana court held that a person signing a document is presumed to know its contents and that under the contract the telephone company had the express right to delete the NSID advertising requested by the subscriber if any objection arose over his right to use such a classification. Id.
Both Bell and P S were bound by the terms of the applications, and thus Bell was within its contractual rights in rejecting the listings of P S when it received notice from the IBM Corporation that P S was not an authorized IBM dealer. McKay, supra. See also Dollar A Day Rent A Car Systemsv. Mountain States Telephone and Telegraph Co., 22 Ariz. App. 270,526 P.2d 1068 (1974) (the defendant's regulatory policy for its directory held reasonable in that it bore a logical relationship to defendant's policy of avoiding questionable practices and public misdirection).
Summary judgment is appropriate in a breach of contract action where the contract is unambiguous and the facts *Page 932 
undisputed. In Food Service Distributors, Inc. v. Barber,429 So.2d 1025, 1028 (Ala. 1983), the Court stated:
 "The decision whether a contract provision is or is not ambiguous is a question of law for the trial court. . . . Food Service alleges that the ambiguity arises through its understanding of the termination provision. On the contrary, it is well settled that the words of a contract are to be given their ordinary meaning, and the intention of the parties is to be derived from the provisions of the contract itself. . . . If the court finds as a matter of law that a contract is unambiguous, then the construction and legal effect of that contract are a determination that may be appropriately made by summary judgment." (Citations omitted.)
Because we have concluded that summary judgment was appropriate for the reasons given, we need not address other reasons brought forward by Bell which deal with tariffs which control advertisements contravening public policy.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.
[1] Provision 8 also contains a general saving clause: "This application is not binding until accepted by the Telephone Company. The Telephone Company will not be bound by any agreement not expressed herein and reserves the right to reject any advertising which it deems undesirable."