This is an appeal from a judgment in favor of the plaintiff, C.F. Frost, and against the defendants, Russellville Production Credit Association (hereinafter R.P.C.A.) and Braxton Craig. We reverse.
Frost is a 69-year-old farmer with a fourth-grade education. He has farmed all of his life except for a period of ten years when he operated a store. He does not own his own farmland, but rents land for that purpose.
On November 22, 1983, Frost went to the Lawrence County office of the R.P.C.A. and met with Craig, who was then manager of that R.P.C.A. branch. Frost had been doing business with the R.P.C.A. for about *Page 1085 
fifteen years. At the time of this meeting with Craig, Frost was indebted to R.P.C.A. on a three-year equipment note and on a crop loan he had taken out for 1983, which included unpaid portions of crop loans for preceding years. At the meeting, Frost paid $2,373.36 from proceeds of his meager soybean crop (worst in the county) to R.P.C.A. to reduce that indebtedness. R.P.C.A. returned $1,975 of this money to Frost for him to pay the balance of his 1983 crop rent. Frost testified that he had the following conversation with Craig during this meeting:
 "And I showed him the receipt and I told him, I said `Braxton, I know I ain't made what I was supposed to,' but I says `I need to know whether I can make a crop another year or not, whether I can get furnished where I can rent my land.' And he says, `Yeah, Mr. Frost, we will go along with you.' He says, `we are all in the same boat'. . . ."
Frost then told Craig that he intended to rent some farmland for 1984, and he did so.
Some weeks later, Craig asked Frost to consider selling some of his equipment, since Frost and his son-in-law were farming together and had more equipment than was needed, and applying the proceeds from that sale to his existing R.P.C.A. debt. Craig did not order Frost to sell any equipment, nor did he tell him the equipment had to be sold within a particular time or for a particular sum. Frost testified that he had already been considering a sale of this equipment before this meeting with Craig. Soon after, Frost sold some of his equipment at prices he agreed to and applied the proceeds from the sales to the three-year equipment note. The equipment sold was security for the equipment note.
When Frost went to the R.P.C.A. on January 30, 1984, Ken Baggett, acting office manager, told him that in order to secure a 1984 crop loan, Frost would have to give R.P.C.A. a mortgage on his house and the land surrounding it as additional security. The house and land were free and clear of all indebtedness. Frost refused to give R.P.C.A. a mortgage and attempted to obtain a loan elsewhere from the Farmers Home Administration (FHA), and several banks; however, none of these other institutions would make Frost a crop loan unless he secured this with a mortgage on his house and land. Frost did not obtain a crop loan for 1984, and he did not farm that year. Frost sublet the land he had leased for 1984 to his son-in-law, who then became obligated to pay the rents.
Frost brought suit against the R.P.C.A. and Craig by a two-count complaint alleging breach of contract in count one and alleging fraud in count two. At the close of Frost's evidence, R.P.C.A. and Craig moved for directed verdict as to count two. This motion was renewed at the close of all the evidence. Both motions were denied. The jury returned a general verdict against the R.P.C.A. and Craig in the amount of $13,500. R.P.C.A. and Craig moved for judgment notwithstanding the verdict (J.N.O.V.), or in the alternative, for new trial. This motion was overruled.
We must answer this question: Did the trial court err when it denied R.P.C.A.'s and Craig's motion for J.N.O.V., or in the alternative, for new trial? We hold that it did; therefore, we pretermit discussion of the other issues presented.
A motion for J.N.O.V. requires the trial court to review its earlier ruling on a motion for directed verdict, since both motions test the sufficiency of the evidence. Wright v.Fountain, 454 So.2d 520 (Ala. 1984). The sufficiency of the evidence standard applied in this state is the scintilla rule.Carnival Cruise Lines v. Snoddy, 457 So.2d 379 (Ala. 1984). The question thus becomes whether there was a scintilla of evidence of fraud for that claim to go to the jury.
In P S Business, Inc. v. South Central Bell Telephone Co.,466 So.2d 928 (Ala. 1985), this Court wrote:
 "The elements of fraud are (1) a false representation (2) of a material existing fact (3) relied upon by the plaintiff (4) who was damaged as a proximate result of the alleged misrepresentation. Earnest v. Pritchett-More, Inc., *Page 1086 401 So.2d 752 (Ala. 1981). If the fraud is based upon a promise to perform or abstain from performing in the future, two additional elements must be proved: (1) the defendant's intention, at the time of the alleged misrepresentation, not to do the act promised, coupled with (2) an intent to deceive. Clanton v. Bains Oil Co., 417 So.2d 149 (Ala. 1982)."
466 So.2d, at 930.
Examining the evidence most favorably to the plaintiff in this case, we cannot find a scintilla of evidence that R.P.C.A. or Craig intended not to do the act promised, at the time they agreed "to go along with [Frost]" for the 1984 crop loan. Frost argues that in reliance upon R.P.C.A.'s representation that he would be given a crop loan for 1984, he entered into lease agreements, for which he continues to be obligated, and he sold some of his farm equipment to reduce his existing debt. But the promise to give Frost a crop loan for 1984 was a promise to perform in the future. No terms were discussed; no loan application was completed. Therefore, in order for Frost to prove the fraud as alleged, Frost was required to show that the R.P.C.A. and Craig had no intention of making him a loan when, on November 22, 1983, Craig said, "Yeah, Mr. Frost, we will go along with you." However, Frost did not introduce any evidence, either direct or circumstantial, tending to show this. R.P.C.A. and Craig never said they would not lend Frost the money needed for a 1984 crop. In fact, the evidence shows that R.P.C.A. would readily have lent Frost the money for his 1984 crop, if he had agreed to secure this loan with a mortgage on his house and land.
The failure to perform a promised act is not in itself evidence of intent to deceive at the time a promise is made. P S Business, Inc. v. South Central Bell Telephone Co., supra.
If it were, the mere breach of a contract would be tantamount to fraud. Id.
A plaintiff may meet this burden of proving a present intent not to perform a future act as promised by circumstantial evidence, but the circumstances shown by the evidence of record must be such that the jury, as reasonable persons, may fairly and reasonably infer the ultimate fact sought to be proved from the evidence presented. Clanton v. Bains Oil Co., 417 So.2d 149
(Ala. 1982). Frost argues that two circumstances surrounding Craig's representation provided a scintilla of evidence that R.P.C.A. did not intend to perform its promise when Craig made it. Frost contends that one such circumstance was that Craig knew before the promise was made that Frost did not want to execute a mortgage on his house and land as security for the crop loan. However, when Craig made the promise of a loan to Frost, clearly the terms of the loan were not specified. The statement "Yeah, Mr. Frost, we will go along with you" is the evidence most favorable to Frost. There was no mention of amount, method of payment, rate of interest, or security to be required. R.P.C.A. did later agree to lend Frost the amount he requested, subject to the loan being secured by a mortgage on Frost's house and land. This same requirement was imposed by lenders to whom Frost owed no money to secure only the amount needed for the 1984 crop loan. Frost had made no money farming for four or five years, and his indebtedness to R.P.C.A. grew each year. Frost prefaced his request for a loan with an acknowledgment that he was not paying what he should on his present indebtedness. In light of the foregoing evidence, nothing in the law prevented R.P.C.A. from setting reasonable conditions on the fulfillment of its promise to make the loan, such as the condition that Frost give it a mortgage as additional security. See Brown-Marx Associates, Ltd. v.Emigrant Savings Bank, 703 F.2d 1361 (11th Cir. 1983).
Frost contends that another such circumstance was that R.P.C.A. did not tell Frost that he would have to mortgage his house and land until after he had sold some of his equipment. R.P.C.A. had a security interest in this equipment, and Frost's indebtedness to R.P.C.A. was reduced by the amount Frost received for this equipment. *Page 1087 
There is no evidence that Frost could have obtained a loan from R.P.C.A. or anyone else, without securing it by a mortgage on his house and land, if he had not sold the equipment, nor could such be logically inferred by a jury. After the equipment was sold, Frost's position with R.P.C.A. remained the same. The security for the R.P.C.A. loan was sold and Frost's indebtedness to R.P.C.A. was reduced by the market value of the equipment sold. Certainly, the jury could not logically have inferred that R.P.C.A. would release its security interest in the equipment sold without being paid so that Frost might use the then unencumbered equipment as security to obtain a loan from some other lending institution. The sale of the equipment did not in any way inhibit Frost's ability to farm. The equipment was sold because it was not needed; neither R.P.C.A. nor Craig ever demanded that Frost sell the equipment, nor did they set a price for which the equipment had to be sold, nor did they set a time during which it must be sold. Frost had previously considered selling the equipment; R.P.C.A., as the secured party, merely made it possible for him to do so.
Ordinarily, intent is a matter peculiarly within the province of the trier of fact. Walker v. Woodall, 288 Ala. 510,262 So.2d 756 (1972). However, a jury does not have untrammeled discretion to speculate upon the existence of such intent.Purcell Co. v. Spriggs Enterprises, Inc., 431 So.2d 515 (Ala. 1983). A scintilla of evidence will not be inferred from the mere speculation that R.P.C.A. may have known that Frost would not accept a loan if a mortgage were required, or that Frost might have obtained a loan elsewhere had Craig not asked Frost to consider selling some of his equipment. Speculation is not the proper basis for a verdict. Kennedy Electric Co. v.Moore-Handley, Inc., 437 So.2d 76 (Ala. 1983).
Under a fraud theory, the most that might reasonably be inferred from the evidence introduced was that Craig's promise was a reckless misrepresentation. However, as this Court made very clear in Kennedy Electric Co., supra, a reckless misrepresentation cannot constitute fraud where the alleged misrepresentation relates to some future event. Where the misrepresentation relates to some future event, it must be shown that the person making the misrepresentation intended not to do the act promised at the time the misrepresentation was made. The promise that Craig made to Frost may have been hastily given, but where is the intent to deceive, or the present intent not to perform? Frost not only did not introduce evidence to prove these elements, but gave the following testimony:
 "Q. You said a while ago that you still trusted Braxton, you still trusted him after he misled you?
 "A. I said I still trusted him. I have trusted him all [the] time up until he went back on his word.
"Q. I see.
 "A. I can't say that he went back on his word. After he moved and all I don't know who is responsible for it."
This testimony indicates that Frost himself did not believe that Braxton Craig intended to deceive or had a present intent not to perform when he made the promise to give Frost a crop loan for 1984.
Unless a plaintiff puts forth some proof that there was something more than a failure to perform, something upon which a jury could infer that at the time the promise was made the defendant had no intention of performing, it is error to submit a fraud claim to the jury. P S Business, Inc., v. SouthCentral Bell Telephone, Co. supra. Frost failed to meet this requirement, and so the trial court erred when it denied the defendants' motion for J.N.O.V., or in the alternative, for new trial.
Where a defendant files a motion for directed verdict as to a count which is not supported by the evidence, detailing with specificity the grounds upon which the particular count is not supported by the evidence and the Court denies the motion, a general jury verdict will not be presumed to have been returned on a count which is *Page 1088 
supported by the evidence. John Deere Industrial Equipment Co.v. Keller, 431 So.2d 1155 (Ala. 1983); Aspinwall v. Gowens,405 So.2d 134 (Ala. 1981). Therefore, the breach of contract count, which may or may not be supported by the evidence,[1] cannot support the jury verdict in this case. For this reason, the judgment must be reversed and the cause remanded for a new trial as to the contract claim.
REVERSED; JUDGMENT RENDERED AS TO FRAUD COUNT; REMANDED FOR NEW TRIAL AS TO CONTRACT COUNT.
TORBERT, C.J., and FAULKNER, BEATTY and ADAMS, JJ., concur.
[1] We are not at liberty to review the evidence as to breach of contract, because Frost did not move for a directed verdict as to that count. Great Atlantic Pacific Tea Co. v. Sealy,374 So.2d 877 (Ala. 1979).