This is an appeal from a summary judgment on a claim for fraud. The plaintiff, S.A. Hodges, sued Catherine Parker Pittman, claiming breach of contract. Subsequently, Hodges amended his complaint to include a claim for fraud. Mrs. Pittman moved for summary judgment, which was denied as to the breach of contract claim, but which was granted as to the fraud claim. Hodges appeals from the defendant's summary judgment on the fraud claim, which was made final pursuant to Rule 54 (b), Ala.R.Civ.P.
This litigation arises from a lengthy dispute between these parties, which began upon the death of Mrs. Pittman's husband, James Bradford Pittman, who died in an airplane crash on October 30, 1978. Mr. Pittman was founder and president of Pittman Equipment Company ("PITCO"), a heavy equipment dealership. Prior to his death, Mr. Pittman owned 60% of the stock of PITCO; Hodges owned 20% of the stock; and the remaining 20% was owned by Wyman Rainey, William Lamar, and Isaac Dennis. All of the stockholders were employed by PITCO, with the exception of Hodges, who had been fired a few weeks before Mr. Pittman's death.
Shortly after Mr. Pittman's death, a dispute arose concerning the rights of the *Page 818 
other stockholders to acquire his stock under a stock purchase agreement made prior to his death. The parties were unable to resolve that dispute and, as a result, Mrs. Pittman filed a declaratory judgment action in Mobile Circuit Court seeking a declaration of the respective rights and obligations of the parties under that agreement. The Circuit Court held that that agreement was void. This Court reversed that judgment in Hodgesv. Pittman, 384 So.2d 14 (Ala. 1980), but the major issues remained unresolved.
During 1980, Hodges and Mrs. Pittman had a number of discussions concerning possible ways to end the litigation over the stock ownership. In those discussions Hodges proposed that Mrs. Pittman align herself with him to accomplish the ouster of the other minority stockholders, and to commit to the management and ownership of PITCO on an equal basis with him.
Mrs. Pittman, individually and as trustee of the trusts established by her late husband's will, entered into a settlement agreement with Hodges that provided the means by which they would oust Rainey, Lamar, and Dennis as officers of PITCO and take over the management of the company. All of the parties entered into discussions over the change in management as well as the conclusion of the litigation over the stock purchase agreement. As a result of the discussions, Rainey, Lamar, and Dennis agreed to sell their stock to PITCO and resign as officers and directors of the company.
After taking control of PITCO, Mrs. Pittman and Hodges discovered that the company was in a perilous financial condition. PITCO was not in a position to honor the obligations that Hodges and Mrs. Pittman had made to the minority stockholders for the purchase of their stock. Mrs. Pittman had to pledge a trust fund as security for PITCO's letter of credit required under the settlement agreement.
Mrs. Pittman agreed to convey 50% of the stock of the company to Hodges, provided that certain conditions were met. The stock transfer was conditioned upon "the retention by the corporation of one or both of the American and Komatsu manufacturing lines throughout the ninety day period after Hodges assumed his duties as president of Pittman Equipment Company, Inc." The agreement stated that the term "retention" meant that none of the lines give written notice of termination of its relationship with PITCO.
American Hoist Company terminated its relationship with PITCO as soon as Hodges's assumption of the presidency of the company became public. Shortly thereafter, Komatsu gave written notice to PITCO that it would continue its relationship only if all of the conditions set forth in its notice were met. One of those conditions was that American Hoist retain its relationship with PITCO, which had already been terminated.
Mrs. Pittman viewed the Komatsu notice as the type of formal action to terminate contemplated in her settlement agreement with Hodges which would relieve her of her obligation to transfer the stock. Consequently, she refused to transfer the stock to Hodges.
Hodges sued for breach of contract and later added a claim for fraud, claiming that Mrs. Pittman never had any intention of transferring her stock in PITCO to him. We must determine whether the trial court erred in granting summary judgment on the issue of fraud.
An essential element in a claim for fraud is that the alleged misrepresentations must have been made with an intent to deceive. Bowman v. McElrath Poultry Co., 468 So.2d 879 (Ala. 1985); Southeastern Properties, Inc. v. Lee, 368 So.2d 288
(Ala. 1979).
 "`The failure to perform a promised act is not in itself evidence of intent to deceive at the time a promise is made. P S Business, Inc. v. South Central Bell Telephone Co., [466 So.2d 928 (Ala. 1985)]. If it were, the mere breach of a contract would be tantamount to fraud. Id.
 "`A plaintiff may meet this burden of proving a present intent not to perform a future act as promised by circumstantial *Page 819 
evidence, but the circumstances shown by the evidence of record must be such that the jury, as reasonable persons, may fairly and reasonably infer the ultimate fact sought to be proved from the evidence presented. Clanton v. Bains Oil Co., 417 So.2d 149 (Ala. 1982). . . .
 "`Ordinarily, intent is a matter peculiarly within the province of the trier of fact. Walker v. Woodall, 288 Ala. 510, 262 So.2d 756 (1972). However, a jury does not have untrammeled discretion to speculate upon the existence of such intent. Purcell Co. v. Spriggs Enterprises, Inc., 431 So.2d 515 (Ala. 1983).
"`. . . .
 "`Unless the plaintiff puts forth some proof that there was something more than a failure to perform, something upon which a jury could infer that at the time the promise was made the defendant had no intention of performing, it is error to submit a fraud claim to the jury. P S Business, Inc. v. South Central Bell Telephone Co., supra.'"
Martin v. American Medical International, Inc., 516 So.2d 640,642 (Ala. 1987), quoting from Russellville Production CreditAss'n v. Frost, 484 So.2d 1084, 1086-87 (Ala. 1986).
Hodges's "evidence" supporting his claim of Mrs. Pittman's intention to deceive consisted of one unsubstantiated statement of hearsay and another statement of one witness's impression of what Mrs. Pittman intended. While it is true that subjective intent can rarely, if ever, be conclusively proven, we agree with the trial court's conclusion that the plaintiff has failed to meet the evidentiary burden imposed upon him. Consequently, while the contract claim remains viable, the judgment of the trial court with respect to the claim for fraud is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, ADAMS and STEAGALL, JJ., concur.