STUART, Justice.
Todd E. Hill, Roy Wayne Hill, Brian A. Hill, and D.ebra Hill Stewart (hereinafter referred to collectively as “the Hills”) filed both a petition for á writ of mandamus and an appeal challenging orders entered by the Mobile Circuit Court on October 7 and October 23, 2015. We deny the petition in case no.. 1150162 and reverse and remand in case no. 1150148.
Facts and Procedural History
The Hills are the children of Leroy Hill, who died testate in 2009. Deborah D. Hill, Leroy’s second wife, offered Leroy’s will for probate. The Hills hired Vincent F. Kilborn III and David A. McDonald (hereinafter referred to as “the attorneys”) to bring a breach-of-contract action against Leroy Hill’s estate and Deborah, alleging breach of an agreement between Leroy and the Hills’ mother at the time Leroy divorced the Hills’ mother in 1984 to make a will leaving the Hills a coffee company and a family ranch. The Hills and the *58 attorneys entered into a retainer agreement, which required the Hills to pay the attorneys “40% of any recovery, in the event there is a recovery, with or without suit.” According to the agreement, “recovery” included cash, real or personal property, stock in the Leroy Hill Coffee Company, and all or part ownership in the family ranch. After a trial, a judgment was entered for the Hills ordering specific performance of the contract, which required the conveyance of the coffee company and the ranch to the Hills. This Court affirmed the trial court’s judgment, without an opinion. See Estate of Hill v. Hill 205 So. 3d 706 (Ala. 2014)(table). The issue now before this Court involves the attorney fee.
A few months before this Court released its October 2014 decision, the administration of the estate was removed from the probate court to the circuit court.[1] In January 2015, the circuit court entered an order stating that neither the coffee company nor the ranch would be conveyed to the Hills until resolution of Deborah’s election for a widow’s share. The court issued an additional order, requiring that evidence be submitted as to the potential taxes and administrative costs to be paid by the estate. The Hills negotiated a settlement of their claims against Deborah, her insurer, and her bank. The circuit court approved the settlement.
On March 31, 2015, the Hills, represented by the attorneys, moved the circuit court to approve the attorney fee authorized in the retainer agreement between the Hills and the attorneys “as a reasonable and necessary estate expense[ ].” As grounds for the motion, the Hills stated:
“1. The parties have reached a global settlement which includes an agreement by the estate to pay [Deborah] a $1.5 million marital bequest (in the form of cash and gold) in exchange for [Deborah’s] dismissal of all her claims against the [estate], including her claim for a one-third statutory share of the estate.
“2. [The Hills] request that this court examine the July 16, 2009, fee agreement between [the Hills and the attorneys,] which establishes a fee of 40% of all ‘cash, real or personal property, including, but not limited to, stock in [the coffee company] or any related company and all or a part ownership in the approximately 4,000 acres [ranch].
“3. [The Hills] further request that the court review the supplemental affidavit of Vincent F. Kilborn regarding expenses, as well as the previously filed affidavits of David A. McDonald, Vincent F. Kilborn, Frank Taylor, Clay Rankin, and Xavier Hartmann,[2] and, thereafter, issue an order that the 40% fee and the $485,929.53 incurred as litigation expenses by [the Hills] in reaching a resolution with [Deborah and her insurer] are reasonable, necessary, and essential expenses of the [Leroy Hill] estate, taking into account the size and character of the estate and the local law and practice.
“4. Such a finding by the court will assist [the Hills] in subsequent discussion with the IRS regarding the tax deductibility of the fees and expenses incurred in ensuring that the estate of Leroy Hill be distributed to the ‘persons entitled to it.’
“5. The potential tax deductibility of the fees and expenses incurred by [the Hills] in the litigation with [Deborah] was a factor in [the Hills’] decision to *59 enter into a global settlement with [Deborah and her insurance company].
“WHEREFORE, the premises considered, [the Hills] request this Court to examine the evidence before it and issue an order approving the July 16, 2009, 40% contingency fee agreement and the related litigation expenses as reasonable, necessary and essential fees and expenses of the Leroy Hill estate to ensure that the Leroy Hill estate be distributed to the persons entitled to it.”
Hills’ petition, at Exhibit G (emphasis added).
On March 31, 2015, the circuit court entered an order granting the Hills’ motion, stating:
“This matter is now before the court on [the Hills’] February 27, 2015, submission and [their] March 25, 2015, supplement in response to this court’s January 26, 2015, order that evidence be submitted as to the potential estate tax owed and the administrative costs to be paid from the estate. After carefully considering all relevant evidence, including the July 16, 2009, contingency fee agreement and the affidavits of David A. McDonald, Vincent F. Kilborn, Frank Taylor, Clay Rankin, and Xavier Hartmann, this court rules as follows:
“1. The contingency fee agreement between the [Hills] and [the attorneys] provides as an attorney fee 40% of all ‘cash, real or personal property, including, but not limited to, stock in [the coffee company] or any related company and all or a part ownership in the approximately 4,000 acres [ranch].’
“2. The contingency fee agreement further provides that the [Hills] shall be responsible for all litigation expenses incurred by the attorneys.
“3. The Court finds that the 40% attorney’s fee of all cash and real or personal property of the [estate] and litigation expenses in the amount of $485,929.53 are necessary, reasonable and essential expenses incurred for the proper resolution of the [estate], taking into account the size and character of the estate and the local law and practice.
“4. Without the fees and expenses incurred above, the Court finds the estate would not have been distributed to the persons entitled to it.”
Hills’ petition, at Exhibit H.
After Deborah was removed as administrator, the circuit court appointed Frank H. Kruse to administer the estate. The circuit court ordered Kruse to obtain professional appraisals of the assets of the estate and to complete the administration of the estate. Kruse determined there was no estate-tax liability resulting from either the will contest or the settlement and reported that conclusion to the circuit court. He also sought appraisals of the coffee company and the ranch.
In early April 2015, the Hills paid the attorneys approximately $1,835,000 in attorney fees and $485,929 in litigation expenses from funds transferred to the attorneys’ trust account under the Hills’ settlement with Deborah and her insurer.
On April 14, 2015, the attorneys moved to withdraw as counsel for the Hills, alleging that, in light of the court’s determination that the attorney fee authorized in the retainer agreement between the Hills and the attorneys resulting from the breach-of-contract action was a necessary, reasonable, and essential expense incurred for the proper resolution of the estate, they were now creditors of the estate and were entitled to “40% ownership” in all assets of the estate. Hills’ petition, at Exhibit J. On May 18, 2015, the attorneys, “as creditors of the Estate and rightful owners of 40% of all Estate assets,” moved the circuit court for an’order disbursing all cash on *60 hand, approving the sale of personal property, and appointing a special. master to oversee the sale of all real property. As grounds for the motion, the attorneys stated:
“1. As detailed in prior pleadings and affidavits, the [attorneys] have, for nearly six years, .invested thousands of hours and hundreds of thousands of dollars in representing the [Hills]. The [attorneys] have also associated two other law ferns to .assist in what has become one of the most complex, time consuming, and expensive estate disputes in the history of Alabama.
“2. By order dated March 31, 2015, this Court deemed the July 16, 2009, fee agreement between [the attorneys] and the [Hills] (which provides as attorneys’ fees 40% of all estate ‘cash, real or personal property’) to be ‘necessary, reasonable and'essential expenses incurred for the proper resolution of the estate of Leroy Hill.’
“3. Pursuant to § 43-2-371(2), [Ala. Code 1975,] satisfaction of these 40% attorneys’ fees takes precedence over any claim against the estate (except funeral expenses which have long since been paid).
“4. As a result of the [attorneys’] diligent efforts, the [Hills] (assuming there are no additional estate expenses) are entitled to 60% of:
“(a) the 3,561 +/- acre [ranch],
“(b) approximately $2 million in cattle and ranch equipment, and
“(c) the [coffee company].
“5. Additionally, the [Hills] are entitled to $1,863,566 which, at the request of counsel representing the [Hills], is being held in the trust account of Vincent P. Kilborn, III pending resolution of this attorneys’ fees issue. .
“6. The [Hills] have made in payment toward the attorneys’ fees owed: On April 1,2015, the [Hills] disbursed to the attorneys 40% of $4,588,687.24 in cash that [the attorneys] had generated for the estate by:
“(a) negotiating a $2.8 million net cash settlement with {Deborah’s insurance company] and Deborah,
“(b) ... requiring [Deborah] to repay and release all claim to $1 million that she had taken out of the [ranch] account, and
“(c) overseeing the rehabilitation and sale of [the ranch] cattle that had suffered greatly under the mismanagement of [Deborah].
“7. Other than disbursing 40% of documented cash on hand, the [Hills] have not satisfied their obligation pursuant to the attorney fee agreement. Instead, after making the April 1, 2015 disbursement, the [Hills] asked the [attorneys] to accept a ‘cash buyout’ of their 40% in [the coffee company, the ranch, the] cattle and [the] equipment.
“8. In response, [the attorneys] stated that they would accept a cash buyout in the amount of $10 million for a release of their 40% ownership interest in the entire [estate]. This is consistent with the position the.. [Hills] have taken for the past six years that the [estate] is worth $25 million.
“9. Believing that .the [Hills] were acting in good faith and were making arrangements to pay the cash buyout (which the Hills [had] requested), the [attorneys] did not object when it came to light that Roy Wayne Hill had moved his family and horses from Washington to take up rent free residence in the old home place on approximately 500 acres of the [ranch], when Brian Hill also continued to live rent free on the [ranch], when the [Hills] announced that they would be the ones selecting which par- *61 eels of [the ranch] to offer for sale to satisfy the cash buyout, or when the Hills indicated that they would conduct all sales negotiations.
“10. The [attorneys] believe that the most valuable portions of [the. ranch] have never been offered for sale and instead have been reserved by the [Hills] for themselves. Again, the [attorneys] did not object to this so long as the [Hills] agreed to pay the [attorneys] 40% of the estate’s value.
“11. Instead, on Friday May 15, 2015, the [Hills] announced that $25 million ‘far exceeds’ the Estate’s true value. The Hills now claim that the 3,561 +/- acre [ranch], the [coffee company], cattle, and equipment are collectively worth only $11.6 million. Accordingly, the Hills claim that [the attorneys] are entitled to a fee of only $4,664,525.10, not $10 million.
“12. The [Hills’] newfound valuation stands in stark contrast to the value they have placed on the estate for the past six years. At trial, for example, the [Hills] valued just [the ranch’s] real estate (before adding cattle and equipment and before even valuing the coffee company) to be worth $19.5 million. .
“13. In fact, the [Hills] criticized as grossly undervalued the nearly $11 million value that [Deborah] placed on just [the ranch’s] real estate.
“14. Yet now, for purposes of paying the debt owed to [the attorneys] for securing the entire Hill estate, ,the [Hills] (who stood to inherit a grand total of $675,000 under the will probated by [Deborah]) have slashed their valuation of the estate by more than 50%.
“15. The [Hills’] valuation of the entire estate is certainly not supported by two offers to purchase portions of [the ranch] that the Hills have disclosed to [the attorneys]. The Court will recall its April 15, 2015, order approving the sale of a portion of the [ranch] • (which the buyer intended to use as farm land).
“16. By no means was this unimproved parcel the most valuable parcel of [the ranch] property. Nevertheless, if the entire [ranch] were sold for the per acre price offered for this unimproved parcel, sale of the ranch alone would generate substantially more than the $11.6 million the Hill heirs now claim the entire estate is worth.
“17. The value the [Hills] have placed upon the [estate] is so disparate from that placed on it by [the attorneys] (and by offers to purchase non-prime portions of the ranch) that no compromise can be reached regarding the [Hills’] requested buyout.
“18. Moreover, the gulf in principles between the [Hills] and the [attorneys] is so great that neither [the ranch] nor [the coffee company] can be effectively operated with the parties as partners.”
Hills’ petition, at Exhibit K. The attorneys then proposed that the circuit court order the Hills to pay the attorneys 40% of all cash on hand attributable to the ranch; that the court order the Hills to vacate the ranch; that the court oversee the management of the ranch until it could be sold; that the court order the wind down of the cattle operation at the ranch; and that the court order the sale of boats owned by Leroy before his death, the real property that constitutes the ranch, and the coffee company.
On May 22, 2015, the Hills objected to, among other matters, the attorneys’ request for disbursement of the cash on hand.and for the sale of real and personal property, arguing:
“1. The motion incorrectly characterizes [the attorneys] as creditors of the [estate]. The retainer agreement dated. July, 16, 2009, .... was between [the *62 attorneys] and [the Hills], and not the estate. The Estate was a defendant in the action, not the client under the retainer agreement. Thus, the legal fee due under the retainer agreement is due by the [Hills] from their recovery on the breach-of-contract action described in the retainer agreement, not from the Estate. This is an important distinction because § 43-2-444, Ala. Code 1975, cited by [the attorneys] as authority for this Court’s authority to sell the real estate, only applies if the sale is necessary either to pay debts of the estate, or because the property cannot be divided among the heirs and devisees. Further, unless the application is filed by the executor or administrator, the Court acquires no jurisdiction. Bolen v. Hoven, 143 Ala. 652, 39 So. 379 (1905). [The attorneys] cite no authority for their request that the court order a sale of the other assets of the estate.
“2. [The Hills and the attorneys] attempted to reach an agreement on a cash payment to settle the claim of [the attorneys] under the retainer agreement. Assuming an agreement had been reached, [the Hills] would satisfy the payment through the sale of assets of the estate. However, [the Hills and the attorneys] were unable to reach an agreement on a cash payment because of differences in opinion on the value of the assets recovered under the retainer agreement. More importantly, values are only relevant in the context of negotiations between the parties to the retainer agreement for a cash settlement of the claim for legal fees, a matter not before the court and not relevant under this retainer agreement. Thus, the retainer agreement should be carried out according to its clear and unambiguous terms as drafted by [the attorneys].
“3. As stated in the order dated March 31, 2015, the retainer agreement provides as an attorney fee, 40% of all ‘cash, real or personal property, including, but not limited to, stock in' [the coffee company] or any related company and all or a part ownership in the approximately 4,000 [actually 3561 +/-] acre [ranch].’ In order to satisfy this obligation, [the Hills] are prepared to tender to [the attorneys] the following: (a) an interest in 40% of the issued and outstanding shares of common stock in [the coffee company]; (b) an undivided 40% interest in the 3561 +/- acres constituting the [ranch]; and (c) an undivided 40% interest in [the boats] and the ranching operation, including the cattle, equipment, bank account and any other assets. [The Hills] are in agreement with the marketing proposal of Perry Mobley dated May 1, 2015, to liquidate the cattle operation and ranching equipment and deposit the proceeds into the bank account of the ranching operation. After the sale of the cattle and ranching equipment, the bank account of the ranching operation would be divided based upon its 40%-60% ownership.”
Hills’ petition, at Exhibit L.
On September 28, 2015, the Hills also moved the circuit court to reconsider or clarify its March 31, 2015, order “to the extent that it purports to determine that legal fees provided for in that certain retainer agreement between [the Hills and the attorneys] are administration expenses payable by [the estate].” The Hills argued that because it had been determined that no estate tax could be assessed legally against or collected from the estate by the IRS, the circumstances have changed and the Hills are “claimants against the Estate.” They maintained that because they had filed claims against the estate and their earlier action alleged breach of a contract between Leroy and their mother, they are judgment creditors, not heirs of *63 the estate. They reasoned that the attorneys are creditors of creditors, not direct creditors of the estate. Specifically, they stated:
“Because the characterization of the legal fees as administrative expenses is no longer beneficial to the estate as an estate tax deduction, because such fees were not incurred by the executor or administrator of the [estate], the [Hills] request that the Court reconsider or clarify the March 31 order to hold only that the 40% fee is reasonable.”
Hills’ petition, at Exhibit 0.
Furthermore, on September 28, 2015, the Hills moved the circuit court to deny the attorneys’ claim against the estate for the attorney fee. They argued that enforcement of the contract between the Hills and the attorneys is outside the circuit court’s jurisdiction because, they said, it did not present a question dealing with the administration of the estate.
On October 7, 2015, the circuit court entered an order, denying the Hills’ motion to reconsider its March 31, 2015, order, restating that the attorney fee, as agreed upon between the attorneys and the Hills in the retainer agreement, is an administrative expense of the estate, determining the value of the remaining assets in the estate to be $33,129,500, and ordering the administrator to devise a plan to satisfy the payment of the attorney fee, i.e., $13,251,800, less any amounts previously paid.
On October 15, 2015, Frank Kruse, the administrator of the estate, moved the circuit court to authorize the payment of $1,500,000 to the attorneys in partial satisfaction of the remaining amount of the attorney fee that had been determined to be an administrative expense of the estate. On October 23, 2016, the circuit court ordered Kruse to pay the attorneys $1,500,000 and to credit this amount against the balance owed the attorneys.
On November 6, 2015, the Hills filed a notiee of appeal to this Court, case no. 1150148, and on November 16, 2015, petitioned this Court for a writ of mandamus, ease no. 1150162. In both the appeal and the mandamus petition, the Hills challenge the October 7 and 23, 2015, orders.[3]
Analysis
Petition for Writ of Mandamus (case no. 1150162)
The Hills petition this Court for a writ of mandamus directing the Mobile Circuit Court to vacate its October 7 and October 23, 2015, orders for lack of subject-matter jurisdiction. Specifically, they argue that the circuit court did not have jurisdiction to determine in its March 31, 2015, order that the 40% contingency fee owed the attorneys was an administrative expense of the estate and, consequently, that the circuit court did not have subject-matter jurisdiction when it issued its October 7 and October 23, 2015, orders, addressing the same subject matter.
“Tt is well settled that a writ of mandamus will issue where the petitioner demonstrates “ ‘(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.’ ” ’
“Toler v. Murray, 886 So.2d 76, 78 (Ala. 2004)(quoting Ex parte Fontaine Trailer Co., 854 So.2d 71, 76 (Ala. 2003), quoting *64 in turn Ex parte State ex rel. C.M., 828 So.2d 291, 298 (Ala. 2002)).”
Ex parte Adams, 168 So.3d 40, 43 (Ala. 2014). Moreover, “the question of subject-matter jurisdiction is renewable by a petition for a writ of mandamus.” Ex parte Flint Constr. Co., 775 So.2d 805, 808 (Ala. 2000).
“Subject-matter jurisdiction concerns a court’s power to decide certain types of cases. Woolf v. McGaugh, 175 Ala. 299, 303, 57 So. 754, 755 (1911)(‘ “By jurisdiction over the subject-matter is meant the nature of the cause of action and of the relief sought.’” (quoting Cooper v. Reynolds, 77 U.S. (10 Wall.) 308, 316, 19 L.Ed. 931 (1870))). That power is derived from the Alabama Constitution and the Alabama Code. See United States v. Cotton, 535 U.S. 625, 630-31, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002)(subject-matter jurisdiction refers to a court’s ‘statutory or constitutional power’ to adjudicate a case).”
Ex parte Seymour, 946 So.2d 536, 538 (Ala. 2006).
Here, the circuit court acquired subject-matter jurisdiction over the administration of the estate when the. estate was properly removed from the probate court pursuant to § 12-11-41, Ala. Code 1975.[4] Because the estate was properly removed, the circuit court had the constitutional authority to enter orders necessary to resolve issues attendant to the administration of the estate. See Ala. Const. 1901, Art. VI, § 144 (providing that “whenever the circuit court has taken jurisdiction of the. settlement of any estate, it shall have power to do all things necessary for the settlement of such estate”). See also Allen v. Estate of Juddine, 60 So.3d 852, 855 (Ala. 2010)(noting that “when the administration of an estate is duly removed from the probate court into a court of equity, the jurisdiction of the equity court is complete to accomplish the ultimate purpose of the administration” and that “the jurisdiction of the circuit court encompasses the power to make all orders necessary to the administration of the estate” (citing Cater v. Howard, 230 Ala. 133, 159 So. 830 (1935), and Opinion of the Clerk No. 32, 390 So.2d 1040 (Ala. 1980))). Accordingly, because the determination whether an expense or a fee is an administrative expense of an estate is a decision relating to the administration of an estate, the circuit court had subject-matter jurisdiction to determine whether the 40% contingency fee owed the attorneys constituted an administrative expense of the estate. Because the circuit court did have subject-matter jurisdiction oyer the administration of .the estate, which included determining the.administrative expenses of the .estate, the circuit court had jurisdiction to issue the March 31, 2015, the October 7, 2015, and the October 23, 2015, orders. Therefore, the Hills have not established a clear, legal right to a writ of mandamus, and their petition is denied.
Appeal (case no. 1150148)
The Hills contend in their appeal that the circuit court exceeded the scope of *65 its discretion in denying their motion to reconsider its determination that the attorney fee, which they say is a product of the retainer agreement between the Hills and the attorneys, is an-administrative expense of the estate. ,
The circuit court did not exceed the scope of its discretion in denying the Hills’ motion to reconsider or to clarify its March 31, 2015, order. The record indicates that the Hills themselves requested that the circuit court hold that the attorney fee provided in the retainer agreement between the Hills and the attorneys was an administrative expense of the estate; it was only after that determination became financially disadvantageous to the Hills that they claimed error in the holding. “The rule is that a party may not avail himself of error, if any, into which he has led the court; that is called ‘invited error.’ Thompson v. Magic City Trucking Service, 275 Ala. 291, 154 So.2d 306 [ (1963) ]; Dixie Highway Express, Inc. v. Southern Railway Co., 286 Ala. 646, 244 So.2d 591 [ (1971) ].” State Farm Mut. Auto. Ins. Co. v. Humphres, 293 Ala. 413, 418, 304 So.2d 573, 577 (1974). The Hills invited the error, if any, by the circuit court in this regard.[5] Because the Hills invited the circuit court to hold that the attorney fee was an administrative expense of the estate, they have not demonstrated that the circuit court exceeded the scope of its discretion in refusing to reconsider its determination.
The Hills further argue that, even if the circuit court did not err in determining that the attorney fee authorized in the retainer agreement was an administrative expense of the estate, the circuit court exceeded the scope of its discretion when it reformed the retainer agreement and required the estate to pay the attorneys a lump-sum amount, in cash. Specifically, they argue that the circuit court exceeded the scope of its discretion by ordering that the attorney fee be paid in cash, which, they say, is contrary to the plain terms of the retainer agreement.
In Ex parte Dan Tucker Auto Sales, Inc., 718 So.2d 33, 35-36 (Ala. 1998), this Court recognized:
“General contract law requires a court to enforce an unambiguous, lawful contract, as.it is written. P & S Business, Inc. v. South Central Bell Telephone Co., 466 So.2d 928, 931 (Ala. 1985). See also McDonald v. U.S. Die Casting & Development Co., 541 So.2d 1064 (Ala. 1989). A court may not make a new contract for the parties or rewrite their contract under the guisé' of construing it. Estes v. Monk, 464 So.2d 103 (Ala. Civ. App. 1985).”
Here, the circuit court exceeded the scope of its discretion by ordering that the attorney fee be paid in cash, in a lump sum. The language in the retainer agreement clearly defines the attorney fee to which the attorneys and the .Hills agreed. The agreement, in unambiguous language, requires the attorneys be paid “40% of any recovery.” The agreement then provides:
“Recovery as defined herein may include cash, real or personal property, including, but not limited to, stock in [the coffee company] or any related company and all or a part ownership in the approximately 4,000 acres [ranch].”
The definition of recovery is clearly stated in the agreement, and the circuit court’s order of a lump-sum payment is not in accord with that definition. Therefore, the circuit court exceeded the scope of its discretion when it failed to order the payment *66 of the attorney fee in accordance with the retainer agreement.
The attorneys contend that negotiations occurred subsequent to the execution of the retainer agreement that permit the modification of the contract to include in the definition of recovery a lump-sum payment of 40% of the value of the assets of the estate. See Kinmon v. J.P. King Auction Co., 290 Ala. 328, 325, 276 So.2d 569, 570 (1973)(“Contracting parties are free to modify their contract by mutual assent.”). The record, however, does not adequately support a finding that the retainer agreement has been so modified.
The circuit court exceeded the scope of its discretion in failing to order the payment of the attorney fee in accordance with the terms of the retainer agreement. Its orders are therefore reversed, and this case is remanded for proceedings consistent with this proceeding.
Conclusion
Because the circuit court had jurisdiction over the administration of the estate, the petition for a writ of mandamus (case no. 1150162) is denied; the orders appealed from in case no. 1150148 are reversed and the case remanded.
1150162—PETITION DENIED.
1150148—REVERSED AND REMANDED.
Bolin, Parker, Main, Wise, and Bryan, JJ., concur.
Murdock, J., concurs in the result.

. The parties agree that the administration of the estate was properly removed to the circuit court.

. Taylor, Rankin, and Hartmann were hired by the attorneys to assist in the litigation,

. On August 24, 2016, this Court remanded the case in appeal no. 1150148 to the circuit court to certify the orders of October 7 and October 23 as final judgments, pursuant to Rule 54(b), Ala. R. Civ. P. On September 6, 2016, the circuit court filed its certification.

. Section 12-11-41 provides:
“The administration of any estate may be removed from the probate court to the circuit court at any time, before a final settlement thereof, by any heir, devisee, legatee, distribu-tee, executor, administrator or administrator with the will annexed of any such estate, without assigning any special equity; and an order of removal must be made by the court, upon.the filing of a sworn petition by any such'heir, devisee, legatee, distributee, executor, administrator or administrator with the will annexed of any such estate, reciting that the petitioner is such heir, devisee, legatee, distributee, executor, administrator or administrator with the will annexed and that, in the opinion of the petitioner, such estate can be better administered in the circuit court than in the probate court.”

. Because the doctrine of invited error precludes consideration of the merits of this issue, we do not decide the propriety of the circuit court’s determination that the attorney fee was an administrative expense of the estate.